Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Sam Strauss (to be admitted *Pro Hac Vice*)
sam@turkestrauss.com
Raina Borrelli (to be admitted *Pro Hac Vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

*Attorneys for Plaintiffs and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES UHARRIET, on behalf of himself and all others similarly situated,<br><br>                         Plaintiff,<br><br>v.<br><br>MyLife.com, Inc.,<br><br>                         Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. CIV. CODE § 3344 AND CALIFORNIA MISAPPROPRIATION OF NAME OR LIKENESS<br><br><u>CLASS ACTION</u><br><br>**<u>JURY TRIAL DEMANDED</u>** |

CLASS ACTION COMPLAINT

**NATURE OF ACTION**

1.      Plaintiff and members of the proposed class (the "Class") are private individuals who have no relationship with the Defendant MyLife.com, Inc. ("Defendant" or "MyLife") or the website it owns and operates at www.mylife.com. Plaintiff and the Class have never used mylife.com, nor did they provide their names, ages, addresses, photographs, or any other personal information to MyLife.

2.      Plaintiff was seriously distressed to discover that MyLife is using his name, personal information, and persona to advertise paid subscriptions to its website. MyLife's advertisements suggest that Plaintiff has a criminal record and may be on a sex offender list.

3.      Plaintiff and the Class did not consent to MyLife using their names, personal information, photographs, and personas to advertise website subscriptions or any other product.

4.      Defendant advertises its website by publicly displaying teaser profiles of the Plaintiff and Class members with their names, ages, current and past cities of residence, workplaces, and other personal information. Some teaser profiles include photographs.

5.      Defendant advertises that it possesses additional information about Plaintiff and Class members including: "embarrassing online photos that [Plaintiff or Class member] doesn't want you to see"; "Negative Items on [Plaintiff's or Class member's] Public Reputation Profile"; "sensitive information & graphic content" such as their "Sex Offender Status"; "Criminal & civil court records" including "Felonies" and "Misdemeanors"; "satellite pictures" of their "known addresses"; the identities of their "spouse, parents, siblings, children, grandparents, & other family members"; and their "Financial Data" including "estimated income, net worth, [and] home value." Defendant advertises that if users purchase a subscription plan starting at $10.95 per month, they will receive access to a full profile including this additional information about the Plaintiff and Class members, as well as full profiles containing similar information about millions of other individuals.

6.      Defendant also uses Plaintiff's and Class members' personal information and personas to advertise its "Premium Membership" service. Only by purchasing Defendant's

"Premium Membership," which requires monthly payments of $7.95, can subscribers modify, remove, or prevent others from seeing potentially embarrassing or harmful personal information about the subscriber on mylife.com.

7.     MyLife publishes a "Reputation Score" associated with Plaintiff and the Class members. The "Reputation Score" is determined by MyLife and is purportedly based on the personal information MyLife has gathered about Plaintiff and the Class members. MyLife advertises that users who pay $10.95 per month will receive as part of their subscription access to the "Reputation Scores" of Plaintiff, the Class members, and millions of additional individuals. MyLife advertises that users who pay $7.95 for a "Premium Membership" will receive the ability to "Correct, Enhance & Monitor" their "Reputation Score," which MyLife claims "could affect your life both personally and professionally."

8.     MyLife does not present Plaintiff's and Class members' profiles as "samples" advertising the purchase of a single profile containing additional information. Rather, MyLife uses Plaintiff's and Class members' names and personas to advertise subscriptions to mylife.com.

9.     At a cost of $10.95 per month, a mylife.com subscription includes far more than access to the profile of the individual whose persona MyLife used to advertise the subscription. A subscription delivers access to the full profiles of millions of individuals, including potentially embarrassing information, "Reputation Scores" determined by MyLife, and the ability to "See everyone else who is also looking at" each profile.

10.     At a cost of $7.95 per month, a "Premium Membership" subscription to MyLife delivers not just access to one's own profile, but a variety of services purportedly designed to improve the subscriber's online reputation. The advertised services include the ability to: "Correct Background Facts & Edit" the subscriber's MyLife profile; "lock[] sections" of the subscriber's profile from being seen by others; display an "Excellent Reputation Badge Publicly" on the subscriber's profile; and "See Who's Searching for" the subscriber.

11.     MyLife is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. MyLife does not host user-generated

content on or in any part of the website relevant to this lawsuit. MyLife is the sole curator, designer, and creator of the content described in this Complaint, including the teaser profiles representing Plaintiff and Class members, the "Reputation Scores" corresponding to Plaintiff and Class members, and the advertisements soliciting subscriptions.

12.     Plaintiff does not know how MyLife obtained his name, city of residence, names of relatives, and additional personal information. MyLife states on its website that it "aggregates publicly available information from government, social, and other sources, plus personal reviews written by others." MyLife does not disclose specific sources.

13.     MyLife misappropriated Plaintiff's and Class members' names, personal information, and personas without permission or consent from Plaintiff or the Class. Indeed, Plaintiff and the Class must pay money to MyLife to have some of their personal information removed. Yet even after "Premium Membership" subscribers have paid this unconscionable fee, MyLife continues to advertise using a teaser profile of the subscriber.

14.     Consent is not all or nothing. Plaintiff and Class members may have shared their names, addresses, and other personal information with companies or the government in a variety of contexts. For example, Plaintiff or Class members may have shared their names and addresses with a private company when making a credit card purchase.

15.     But Plaintiff and the Class did not consent to the commercial use of their personal information and personas to promote subscriptions to a website with which they have no relationship. MyLife makes money by (1) peddling purportedly embarrassing personal information; and (2) pressuring subscribers into paying to remove embarrassing information from MyLife and improve their "Reputation Scores," which are entirely invented by MyLife. Plaintiff and the Class did not consent to the use of their personas to promote MyLife's unethical schemes.

16.     California law recognizes the intellectual property and privacy rights of California citizens in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

17.     By using Plaintiff's and Class members' names, likenesses, photographs, and

personas in advertisements for website subscriptions without consent, MyLife has violated their intellectual property and privacy rights. Plaintiff and the Class have the right not to have their personas exploited to promote a product with which they have no relationship and no interest in supporting. Plaintiff and the Class have an economic interest in their personas, which MyLife has stolen, and a privacy interest in their personas, which MyLife has violated.

18.    By these actions, MyLife has violated the California Right of Publicity, codified in Cal. Civ. Code § 3344, and California common law prohibiting misappropriation of a name or likeness. Plaintiff and the Class have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through MyLife's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind. Plaintiff and the Class are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting MyLife's unlawful conduct, the award of attorneys' fees, expenses, and costs, and declaratory relief.

**JURISDICTION AND VENUE**

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative Class are citizens of a state different from at least one defendant. Defendant MyLife is incorporated in Delaware and has its principal place of business in Los Angeles, California. The Class members are residents of California. (B) The proposed Class consists of at least 100 members. MyLife advertises that it has "Reputation Profiles and Reputation Scores for more than 325 million individuals in the U.S." The estimated current population of the United Sates is just over 330 million. Accordingly, MyLife claims to have teaser profiles on every person or nearly every person in the United States. The Class size is therefore equal or close to the entire population of California, i.e., 40 million people, less the number of California residents who have willingly subscribed to MyLife.com. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for statutory damages "equal to the greater

of seven hundred fifty dollars ($750) or the actual damages suffered," as well as "any profits from the unauthorized use." The statute also allows for punitive damages and the award of attorneys' fees and costs. Because MyLife is using the names and personal information of millions of California residents to advertise its website, the amount in controversy is well over the jurisdictional limit.

20.     This Court has general personal jurisdiction over MyLife because its headquarters and principal place of business are in this state.

21.     This Court has specific personal jurisdiction over MyLife because Mr. Uharriet resides in this state and District. MyLife violated Plaintiff's intellectual property rights and misappropriated his persona, the locus of which is in this state and District. MyLife failed to obtain the required consent in this state and District. MyLife displayed the advertisements using Plaintiff's name, personal information, and persona in this state and District.

22.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district.

## PARTIES

23.     Plaintiff James Uharriet is a citizen of California. Mr. Uharriet resides in San Mateo, California. Mr. Uharriet has never used or subscribed to the website mylife.com. MyLife is in possession of Mr. Uharriet's name, city of residence, and relative's names. MyLife uses this personal information in a teaser profile about Mr. Uharriet to advertise subscriptions. MyLife claims to be in possession of additional information about Mr. Uharriet, including his "Sex Offender Status," his supposed "Felonies" and "Misdemeanors," "satellite pictures" of his current and past addresses, "estimated income, net worth, [and] home value," and "embarrassing online photos that James doesn't want [the user] to see." MyLife advertises subscriptions to its website by promising subscribers the ability to view, modify, or block this additional potentially embarrassing information about Mr. Uharriet.

24.     Defendant MyLife.com, Inc. is a Delaware corporation with its headquarters in Los Angeles, California. Defendant owns and operates the website mylife.com.

## GOVERNMENT ACTION

25.     On July 27, 2020, the Federal Trade Commission ("FTC") and Department of Justice ("DOJ") jointly sued MyLife and its founder Jeffrey Tinsely.[1] The Complaint alleges that since 2009 MyLife has "sold their consumer background reports primarily by allowing users of their website to run free background searches for an individual's name, and then displaying search results that imply, often falsely, that the subject of a search may have records of criminal or sexual offenses—records that can only be viewed only by buying a MyLife subscription."[2]

26.     The FTC and DOJ Complaint further alleges that "MyLife search results also include a 'Reputation Score' about a searched-for individual purportedly based on 'public information, gathered from government, social, and other sources, plus personal reviews written by others.' Told that '[r]eputation is more important than credit[,]' and lured by the prospect of paying a relatively small fee to uncover the individual's legal or criminal history and other information, American consumers have paid millions of dollars for MyLife premium subscriptions."[3]

27.     While Plaintiff's complaint arises from some of the same facts as the FTC and DOJ Complaint, the two complaints state claims under different laws protecting different legal rights. The FTC and DOJ Complaint states causes of action under the FTC Act, the Telemarketing Sales Rule, the Restore Online Shoppers' Confidence Act, and the Fair Credit Reporting Act.[4] It does not address the Right of Publicity.

## FACTUAL ALLEGATIONS

28.     Plaintiff James Uherriet has no relationship with MyLife. He is not a subscriber and has never used mylife.com.

_____

[1] *United States vs. MyLife.com, Inc. and Jeffrey Tinsley*, 2:20-cv-06692 (C.D. Cal. complaint filed July 27, 2020).
[2] *Id.*, ECF No. 1 at ¶ 7.
[3] *Id.*
[4] *Id.*, at ¶¶ 39-72.

29.     Mr. Uharriet did not give consent to MyLife to use his name, likeness, personal information, or persona in any way. Had MyLife requested his consent, Mr. Uharriet would not have provided it.

30.     MyLife uses Mr. Uharriet's name and persona in advertisements promoting its website subscriptions. MyLife maintains a teaser profile of personal information about Mr.Uharriet. The teaser profile states his name, city of residence, and names of his relatives. The teaser profile uniquely identifies Mr. Uharriet. A screenshot depicting the teaser profile is shown below. Mr. Uharriet's profile is the second search result. For privacy, Plaintiff's counsel have redacted the first search result and the names of Mr. Uharriet's relatives.



1

2

      31.    MyLife provides a publicly accessible landing page at mylife.com on which users may search by name, location, and contact information for Mr. Uharriet.



32.     Users who search for Mr. Uharriet receive the teaser profile uniquely identifying Mr. Uharriet by name, city of residence, and names of his relatives.

33.     MyLife uses Mr. Uharriet's teaser profile in two advertising techniques. In its first advertising technique, MyLife uses Mr. Uharriet's name, personal information, and persona to advertise a website subscription providing access to additional information about Mr. Uharriet and hundreds of millions of other individuals.

34.     Users who click on either "James Thomas Uharriet" or the button marked "View Reputation Profile" are shown a series of screens in which MyLife purports to be gathering additional "public reputation & background info on James Uharriet," including:

- "embarrassing online photos that **James** doesn't want you to see" (name bolded in original);

- "sensitive details gathered from Civil & Criminal Court records, & sexual offender list";

- "Sex Offender Status";

- Information allowing the viewer to "Determine James Uharriet's trustworthiness";

- "a full history of known addresses for **James Uharriet**" including "satellite pictures of locations, & an interactive map" (name bolded in original);

- "**James Uharriet**'s civil judgments, including the type and amount owed" (name bolded in original);

- "**James**'s contact info" (name bolded in original);

- Street address, email address, and phone number;

- "Work history" and "Education history";

- Records of "Felonies and Misdemeanors";

- "Sensitive information & graphic content," including "information that should not be shared with minors";

- "**James**'s basic information" including "properties & vehicles" he owns (name bolded in original);

- • "Relatives & Associates"; and

- • "Financial data."

35.     A selection of these screens is shown below:





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## The Address & Property section of Profile



**The location section** might include a full history of known addresses for **James Uharriet**. When available, we provide satellite pictures of locations, & an interactive map, & find census data for neighborhoods. This sort of information is typically expensive to purchase on most other services.

## Lawsuits, Liens, Bankruptcy Section of Profile



The amount of litigation that someone has been involved in might say a lot about that person. You can see **James Uharriet**'s civil judgments, including the type and amount owed. **This info might be embarrassing, use with discretion.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



REPUTATION PROFILE READY FOR:

**James Uharriet** In Burlingame, CA

**Remember:** you might be shocked by what you find on **James Uharriet**'s Reputation Profile. **We've scanned countless places** across the Internet for revealing data, places you wouldn't look – saving you time and frustration – to create a Reputation Profile that will help you learn the truth. You might uncover social media or online dating accounts you didn't know existed, or embarrassing online photos that **James** doesn't want you to see.

**CONTINUE**

36.     After the user clicks "Continue" on the last of the screens shown above, MyLife displays a payment page soliciting a subscription to mylife.com for $10.95 per month. The page clearly links Mr. Uharriet's name, personal information, and persona to the purchase of a subscription. The page states "We Found Negative Items On James's Public Reputation Profile" on a bright red banner. In a message displayed directly beneath Mr. Uharriet's name, location, and age, the MyLife urges the user to pay in order to "Get Instant Information On James Now!" MyLife promises that a subscription will provide access to information not just about Mr. Uharriet, but also about other individuals. Subscribers will have the ability to "Search Unlimited for Friends, Neighbors and Dates" and "Check Everyone Else So You're Safe."

37.     In its <u>second</u> advertising technique, MyLife uses Mr. Uharriet's name, personal information, and persona to advertise a "Premium Membership" subscription. This advertising technique targets users like Mr. Uharriet whose names, personal information, and personas appear in teaser profiles on MyLife's website. MyLife warns Mr. Uharriet that (1) MyLife may possess additional "sensitive" information about him; (2) this information may have affected his "Reputation Profile & Public Reputation Score"; and (3) other MyLife users "Might Have Viewed Your Reputation Profile." In exchange for a payment of $7.95 per month, Mr. Uharriet would receive the ability to correct, edit, or prevent others from viewing his personal information on mylife.com. He would also receive various tools to improve his "Reputation Score" on mylife.com.

38.     This is unconscionable. MyLife warns Mr. Uharriet that "sensitive" information in his MyLife "Reputation Profile" may be adversely affecting his reputation profile, which others may have seen. But it is MyLife itself that created Mr. Uharriet's "Reputation Profile." It is MyLife that distributed his full profile to its paying subscribers. And it is MyLife that published his teaser profile publicly in advertisements for MyLife subscriptions.

39.     Users who click on the button marked "This is me – View My Report" in Mr. Uharriet's teaser profile (*see above*) are shown a series of screens in which MyLife purports to be "Aggregat[ing] Reputation & Background Details For You." Like the screens used in the first advertising technique, these screens emphasize the "sensitive" nature of the information MyLife has about Mr. Uharriet. Unlike the screens in the first technique, these screens emphasize the services MyLife provides to "Help[] You Correct & Improve Your Reputation." Among other statements, the screens warn Mr. Uharriet that:

     a.  "Reputation is Everything."

     b.  "your reputation is being looked at CONSTANTLY. It's critical that you manage what's public about you."

     c.  "MyLife Reputation Profiles show up in over 300 million online searches every month."

     d.  "People may have been looking for you."

40.     A selection of these screens is shown below:





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





41.     After the user clicks "Continue" on the last of the screens shown above, MyLife displays a payment page soliciting a subscription for $7.95 per month. The page clearly links Mr. Uharriet's name, personal information, and persona to the purchase of a subscription. The page states "James, We Found Negative Items On Your Reputation Profile" on a bright red banner. In a larger message just below the red banner, the page says "James, To See Your Full Reputation Details With Score & More, Upgrade Now." MyLife promises that a subscription will provide not just access to his full profile, but also the ability to "Correct" and "Edit" the profile, including "locking sections until you approve," as well as the ability to "Hide Anonymous Personal Reviews."



42.   MyLife's sole purpose in using Mr. Uharriet's name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to mylife.com.

43.   Mr. Uharriet does not know how MyLife obtained his name, city of residence, age, and names of his relatives. Nor does he know how MyLife obtained any of the additional "sensitive" or "embarrassing" information it purports to possess in its full profile of Mr. Uharriet.

44.   Contrary to the many insinuations MyLife published in its advertisements about Mr. Uharriet, Mr. Uharriet is not listed on any sex offender list or registry.

45.   MyLife misappropriated Mr. Uharriet's personal information and persona without permission from MyLife or the various sources from which it presumably stole his information.

46.   Mr. Uharriet has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

47.   MyLife has injured Mr. Uharriet by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

48.   MyLife's illegal actions caused Mr. Uharriet mental injury and disturbed his peace of mind. Mr. Uharriet is deeply uncomfortable in the knowledge that MyLife is using his name and persona in advertisements suggesting he has a criminal record and a history as a sex offender. Mr. Uharriet believes his persona is rightly his to control. MyLife's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Uharriet feels that MyLife's use of his name and persona is an alarming invasion of his privacy.

**CLASS ACTION ALLEGATIONS**

49.   Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) and seeks to represent the following Class defined as:

All California residents who are not subscribers of mylife.com and whose names and personal information MyLife incorporated in teaser profiles used to promote its products.

50.     Excluded from the proposed class are Plaintiff's counsel; MyLife, its officers and directors, counsel, successors, and assigns; any entity in which MyLife has a controlling interest; and the judge to whom this case is assigned and the judge's immediate family.

51.     The members of the proposed class are so numerous that joinder of individual claims is impracticable. MyLife advertises that it has "Reputation Profiles and Reputation Scores for more than 325 million individuals in the U.S." The estimated current population of the United Sates is just over 330 million. Accordingly, MyLife claims to have teaser profiles on every person or nearly every person in the United States. The Class size is therefore equal or close to the entire population of California, *i.e.,* 40 million people, less the number of California residents who have subscribed to MyLife.com.

52.     There are significant questions of fact and law common to the members of the class. These include:

    a.  Whether MyLife's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the knowing use without consent of another's name, photograph, or likeness on or in products or for purposes of advertising products within the meaning of Cal. Civ. Code § 3344;

    b.  Whether MyLife solicited and obtained written consent from Plaintiff and the Class prior to using their personas in advertisements promoting its website, as required by Cal. Civ. Code § 3344;

    c.  Whether MyLife's use of Plaintiff's and Class members' names and personal information in advertisements and as part of their subscription products falls within the exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign" within the meaning of Cal. Civ. Code § 3344;

    d.  The amount of MyLife's "profits from the unauthorized use" of Plaintiff's

and Class members' names and personal information;

e.   Whether MyLife's conduct described in this Complaint violates California common law prohibiting misappropriation of a name or likeness;

f.   Whether Plaintiff and Class members are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

53.   Plaintiff's claims are typical of those of the proposed Class. Plaintiff and all members of the proposed Class have been harmed by MyLife's misappropriation and misuse of their identifies, names, likenesses, personas, and other personal information in advertisements promoting mylife.com. MyLife's presents its advertisements in the same way for each Class member.

54.   The proposed class representative will fairly and adequately represent the proposed Class. The class representative's claims are co-extensive with those of the rest of the Class. Plaintiff is represented by qualified counsel experienced in class action litigation of this nature.

55.   A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning MyLife's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

56.   The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. MyLife has acted on grounds generally applicable to the proposed Class, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

57.     The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

## FIRST CAUSE OF ACTION

### Violation of California Right of Publicity Statute, Cal. Civ. Code § 3344

58.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

59.     California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

60.     By engaging in the foregoing acts and omissions, MyLife used Plaintiff's and Class members' names, likenesses, photographs, and personas for commercial purposes without consent. Plaintiff's and Class members' names and personas have commercial value as demonstrated by MyLife's use and similar use by MyLife's competitors.

61.     Each use of a Class members' name and personal information in a teaser profile or full profile is a separate and distinct violation of Cal. Civ. Code § 3344.

62.     Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

63.     As a result of MyLife's violation of Cal. Civ. Code § 3344, Plaintiff and the Class have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff and Class members have been denied the economic value of their names, likenesses, and personas, which MyLife misappropriated without compensation to Plaintiff and the Class. Plaintiff and the Class members were denied their statutorily protected right to refuse consent and protect their privacy and the economic value of their names, likenesses, and

personas. Plaintiff and the Class members suffered emotional disturbance from the misappropriation and misuse of their names and personal information.

64.     Plaintiff on behalf of the Class seeks: actual damages, including MyLife's profits from its misuse; statutory damages; compensatory damages for the royalties MyLife failed to pay; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting MyLife's illegal conduct; and declaratory relief.

## SECOND CAUSE OF ACTION

### Tort of Appropriation of a Name or Likeness

65.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

66.     California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

67.     By engaging in the forgoing acts and omissions, MyLife (1) used the identities of Plaintiffs and the Class in advertisements for subscriptions and as part of its subscription products; (2) appropriated Plaintiff's and Class members' names and likenesses to MyLife's commercial advantage; (3) failed to obtain Plaintiff's and Class members' consent; and (4) injured Plaintiff's and Class members' by causing harm both economic and emotional. *See Eastwood,* at 417.

68.     Plaintiff on behalf of the Class seeks monetary recovery in the amount of the commercial advantage MyLife's derived from its misuse, compensatory damages for MyLife's failure to pay royalties owed, and the entry of an injunction prohibiting MyLife's tortious acts.

## PRAYER FOR RELIEF

69.     WHEREFORE Plaintiff, individually and on behalf of the Class, requests the following relief:

(a) For an order certifying the proposed Class and appointing Plaintiff and his counsel to represent the Class;

(b) For a declaration that MyLife's acts and omissions constitute a knowing

misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy and intellectual property rights, in violation of California law;

(c) For nominal damages awarded in recognition of MyLife's violation of the statutorily protected property and privacy rights of Plaintiff and the Class;

(d) For preliminary and permanent injunctive relief enjoining and preventing MyLife from continuing to operate its mylife.com website without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(e) For restitution for Plaintiff and members the class for the value that Defendants derived from misappropriating their names, likenesses, photographs, and personas;

(f) For an award of damages, including without limitation damages for actual harm, profits earned by MyLife in using misappropriated names and identities to sell subscriptions, reasonable royalties for the infringement of Plaintiff and Class members' intellectual property rights; and statutory damages;

(g) For an award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class members; and

(h) Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.


Respectfully submitted,


Dated: October 21, 2021                     By:  _____/s/ Michael F. Ram_____
                                                  Michael F. Ram


                                            Michael F. Ram (SBN 104805)

mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Sam Strauss (to be admitted *Pro Hac Vice*)
sam@turkestrauss.com
Raina Borrelli (to be admitted *Pro Hac Vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

*Attorneys for Plaintiff
and the Proposed Class*