Gary J. Gorham (SBN 171061)
ggorham@raskinlawllp.com
**RASKIN GORHAM ANDERSON LAW**
11333 Iowa Avenue
Los Angeles, California 90025
Phone: (310) 202-5544 | Fax: (310) 202-5540

Attorneys for Defendant
MyLife.com, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES UHARRIET, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>MyLife.com, Inc.,<br><br>        Defendant. | Case No.: 3:21-cv-08229-VC<br><br>[Assigned to Hon. Vince Chhabria]<br><br>**MYLIFE.COM, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO STAY OR DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SHARYN ELES AND GARY J. GORHAM**<br><br>Date: Feb. 10, 2022<br>Time: 10:00 a.m.<br>Courtroom: 4<br><br><br>Complaint Filed: October 21, 2021<br>Trial Date: None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 10, 2022, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 4, which is located at and which will be heard remotely via Zoom link, MyLife.com, Inc. ("MyLife") will and hereby does move the Court for an order compelling arbitration and staying this case, or alternatively for an order dismissing this case pursuant to Communications Decency Act pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Sharyn Eles and Gary J. Gorham (Dkts. 23-1 and 23-5), all the records and papers filed herein, and documentary evidence as may be presented at hearing of this motion.

This motion is made following the conferences of counsel on November 23 and December 15, 2021 as well as further correspondence among counsel dated November 26, 2021, November 29, 2021, December 16, 2021 and December 20, 2021. MyLife expects that Plaintiffs will oppose the Motion.

Dated: December 23, 2021                    RASKIN GORHAM ANDERSON LAW

By: _____
Gary J. Gorham
Attorneys of Record for Defendant
MYLIFE.COM, INC.

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
OR ALTERNATIVELY, TO STAY OR DISMISS**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION AND ISSUED TO BE DECIDED ........................................................... 1

II.   RELEVANT FACTS ............................................................................................................ 1

   A.   The Claims And Allegations ........................................................................................ 1

   B.   Mr. Uharriet's Agreement To Arbitrate Disputes ....................................................... 3

III.   ARGUMENT ....................................................................................................................... 6

   A.   The Court Should Order Mr. Uharriet's Claims To Arbitration ................................. 6

     1.   Mr. Uharriet's Agreement To Arbitrate Is Binding, Even If Made By His Agent. ......... 6

     2.   The Federal Arbitration Act Requires Arbitration Of Mr. Uharriet's Claims. ............... 7

     3.   The Case Should Be Stayed Pending Arbitration Of Mr. Uharriet's Claims ................. 11

   B.   Alternatively, The Court Should Dismiss Mr. Uharriet's Claims Under The

Communications Decency Act. ............................................................................................. 12

IV.   CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265, 277 (1995) ................................................................................ 7, 8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333, 344 (2011) ................................................................................ 8, 9

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440, 443 (2006) ................................................................................ 8

*Caban v. J.P. Morgan Chase & Co.*,
   606 F. Supp. 2d 1361, 1364 (S.D. Fla. 2009) ................................................ 9

*Caley v. Gulfstream Aerospace Corp.*,
   428 F.3d 1359, 1368 (11th Cir. 2005) ............................................................ 10

*Callahan v. PeopleConnect, Inc.*,
   2021 U.S. Dist. LEXIS 1979161 (May 18, 2021) ............................................ 7

*Caraccioli v. Facebook, Inc.*,
   700 F. App'x 588, 590 (9th Cir. 2017) ............................................................ 12

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119, 1122, 1125 (9th Cir. 2003) .................................................... 12

*Clark v. Andover Sec.*,
   44 F. App'x 228, 231 (9th Cir. 2002) .............................................................. 6

*Coffee v. Google, LLC*, No. 20-cv-03901-BLF,
   2021 WL 493387, at *4 (N.D. Cal. Feb. 10, 2021) ........................................ 12

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213, 218 (1985) ................................................................................ 8

*Dennis v. MyLife.com, Inc.*,
   2021 U.S. Dist. LEXIS 243050 (D.N.J. Dec. 20, 2021) .................................. 14

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938, 944 (1995) ................................................................................ 11

*Goddard v. Google, Inc.*, No. 08-cv-02738-JF,
   2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008) ...................................... 12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79, 91-92 (2000) ........................................................................ 9

*Henderson v. Source for Pub. Data*, No. 20-294,
    2021 WL 2003550, at *5 (E.D. Va. May 18, 2021) ........................................... 13

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79, 83-85 (2002) ........................................................................ 10

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
    No. 18-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ......................... 6, 7

*Jurin v. Google Inc.*,
    695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) ............................................ 12

*Keller Constr. Co. v. Kashani*,
    220 Cal. App. 3d 222, 225-27 (1990) ........................................................... 6

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263, 1268 (9th Cir. 2016) ........................................................... 13

*Letizia v. Prudential Bache Sec., Inc.*,
    802 F.2d 1185, 1187-88 (9th Cir. 1986) ........................................................ 6

*McClain v. Real Estate Bd. of New Orleans*,
    444 U.S. 232, 241-42 (1980) ...................................................................... 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614, 626-27 (1985) ....................................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 24 (1983) ......................................................................... 8, 11, 12

*Obado v. Magedson*, No. 13-2382,
    2014 WL 3778261, at *4 (D.N.J. July 31, 2013) ............................................. 14

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102, 1118 (9th Cir. 2007) ............................................................ 12

*Perry v. Thomas*,
    482 U.S. 483, 490-91 (1987) ........................................................................ 8

*Preston v. Ferrer*,
    552 U.S. 346, 349 (2008) ........................................................................... 10

**TABLE OF AUTHORITIES**

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
　388 U.S. 395, 401 (1967) ................................................................ 8

*Rent-A-Center, W., Inc. v. Jackson*,
　561 U.S. 63, 67-71 (2010) ......................................................... 10, 11

*Shah v. MyLife.Com, Inc.*, No. 12-1592,
　2012 WL 4863696, at *3 (D. Or. Sept. 21, 2012) .................... 13, 14

*Shearson/American Express, Inc. v. McMahon*,
　482 U.S. 220, 226 (1987) .............................................................. 9

*Southland Corp. v. Keating*,
　465 U.S. 1, 16 (1984) ..................................................................... 9

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
　559 U.S. 662, 685 (2010) ............................................................... 9

*Swift v. Zynga Game Network, Inc.*,
　805 F. Supp. 2d 904, 917 (N.D. Cal. 2011) .............................. 12

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-1953,
　2020 WL 6528422, at *4 (C.D. Cal. Oct. 20, 2020) ................... 6

## **Statutes**

47 U.S.C. § 230 ............................................................... 1, 12, 13

9 U.S.C. § 2 ........................................................................ 8, 9

9 U.S.C. §§ 1-2 ...................................................................... 7

Cal. Civ. Code § 2330 ............................................................ 6

**TABLE OF AUTHORITIES**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      <u>INTRODUCTION AND ISSUES TO BE DECIDED</u>**

Defendant MyLife.com, Inc. ("MyLife") seeks an order compelling arbitration pursuant to plaintiff James Uharriet's agreement with MyLife, or alternatively an order dismissing his case pursuant to the Communications Decency Act ("CDA").

At issue in this Motion are: (1) Whether plaintiff James Uharriet agreed to arbitrate his disputes with MyLife; (2) Whether, assuming the agreement to arbitrate was entered into by Mr. Uharriet's counsel in Mr. Uharriet's name, the agreement is enforceable; (3) Whether MyLife should be entitled to limited discovery on the issue of whether Mr. Uharriet intended to authorize counsel to create an account with MyLife in Mr. Uharriet's name; and (4) whether MyLife is immune from the claims in the First Amended Complaint pursuant to Section 230 of the CDA.

**II.      <u>RELEVANT FACTS</u>**

MyLife owns and operates an interactive website, MyLife.com (the "Website"), which provides access to information about people from public records. Through its Website MyLife provides services that allow individuals to understand and manage the information that is available in the public domain about them and others. The information is organized into profiles, some of which can be viewed for free by anyone who conducts a "name search" on the Website.

**A.      <u>The Claims And Allegations.</u>**

Plaintiff James Uharriet initiated this action. The Complaint alleged two causes of action, for statutory and common law breach of Mr. Uharriet's right of publicity. Mr. Uharriet alleged that MyLife used his name and likeness in order to advertise MyLife products, in response to inquiries searching for information about Mr. Uharriet. Mr. Uharriet sought relief individually,

and on behalf of a putative class of California residents. (ECF 1.)

Because MyLife's records revealed that Mr. Uharriet is a registered user of MyLife who agreed to arbitrate any legal disputes with MyLife, and because the Complaint was a virtual mirror image of a class action already pending in Alameda Superior Court on behalf of a putative state-wide class, MyLife met and conferred about a potential motion to compel arbitration, or alternatively for abstention pursuant to the Colorado River Doctrine and the Home State Exception to the Class Action Fairness Act. (Declaration of Gary J. Gorham ("Gorham Decl."), ¶ 4, Ex. 4.)

Mr. Uharriet then amended the Complaint to add new parties and new claims. To wit, plaintiffs Aviva Kellman, Alison Bockius and Karen Evans were added as parties, and the third, fourth, fifth and sixth Claims for Relief were added. Plaintiffs now assert six claims against MyLife under California, Ohio and Nevada law: (1) Violation of California Right of Publicity Statute, California Civil Code section 3344; (2) California tort of misappropriation of name or likeness; (3) Violation of Nevada's right of publicity statute; (4) Violation of Ohio's right of publicity statute; (5) Ohio tort of appropriation of name or likeness; and (6) Violation of California's Unfair Competition Law, California Business & Professions Code §§ 17200 et seq.

Mr. Uharriet is a plaintiff in the First, Second and Sixth claims for relief, under California law. In those claims, Mr. Uharriet alleges that his name and likeness were used by MyLife in "teaser profiles" sent to people who searched for information relating to Mr. Uharriet (First Amended Complaint ("FAC"), ECF 18, at 11, ¶38), and sent to Mr. Uharriet after a visitor to the Website sought information about Mr. Uharriet. (*Id.*, at 16, ¶43.) Mr. Uharriet alleges that these actions violate California's statutory and common law right of publicity, and California's Unfair Competition laws.

In addition to his individual claims, Mr. Uharriet seeks to act as a representative of a putative class action on behalf of "[a]ll people in the United States who are not MyLife subscribers and whose name and personal information MyLife incorporated in teaser profiles used to promote its MyLife membership." (*Id.*, at 35, ¶ 127.)

**B.     Mr. Uharriet's Agreement To Arbitrate Disputes.**

MyLife's records show that Mr. Uharriet is a registered user of MyLife. (Declaration of Sharyn Eles ("Eles Decl.") ¶ 8.) An account was registered in Mr. Uharriet's name on October 17, 2021, making Mr. Uharriet a registered user of MyLife who agreed to its terms and services. (*Id.* ¶¶ 8-12.) A screenshot of MyLife's registration summary for Mr. Uharriet is shown:



(*Id.*, ¶ 8, Exh. 1.)

**1.     MyLife's Arbitration Provision.**

To become a registered user of MyLife in October 2021, a visitor to the Website had to visit the "Join for Free Access to MyLife" page, enter the registered user's name, city, state and date of birth, along with an email address, then click "Join For Free". (Eles Decl. ¶ 9.) Only when a user clicks the "Join For Free" button does MyLife harvest the data and log the visitor as a registered user.

---

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
OR ALTERNATIVELY, TO STAY OR DISMISS**

Registered users are required to agree to MyLife's User Agreement. Below the "Join for Free" button it states that "By clicking on the button above. . .you agree to MyLife's User Agreement and Privacy Policy." (*Id.,* ¶¶ 9-10.) The phrases "User Agreement" and "Privacy Policy" are called out in different colored type, and complete versions of the User Agreement and Privacy Policy are hyperlinked. (*Id.*) Any visitor is provided the opportunity to click on the links and review the User Agreement before registering. By clicking the button to submit his, her or their registration form, the user confirms that he, she or they accept the terms of the User Agreement as a condition of accessing the benefits of the MyLife subscription. (*Id.*, ¶ 10.) A screenshot of the registration page as of October 2021 is shown:



(*Id.*, ¶ 9, Exh. 2.)

The User Agreement sets out in bold type a requirement to arbitration his, her or their individual claims:

> **7.   ARBITRATION: These Terms require that disputes between MyLife and you be resolved by binding arbitration rather than by jury trials or class actions. MyLife.com® and you (such references include our respective subsidiaries, affiliates, predecessors in interest, successors and assigns) agree to arbitrate all disputes and claims arising out of or relating to this Agreement between MyLife.com® and you.**

* * *

**The arbitration shall be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and shall be administered by the AAA. All issues are for the arbitrator to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Agreement. A judgment upon the award entered by the arbitrator may be entered in any court having jurisdiction thereof.**

* * *

**You agree that, by entering into this Agreement, you and MyLife.com® are waiving the right to a trial by jury. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. You and MyLife.com® agree that YOU AND MYLIFE.COM® MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may not consolidate proceedings or more than one person's claims and may not otherwise preside over any form of a representative or class proceeding, and that if this specific proviso is found to be unenforceable, then the entirety of this arbitration clause shall be null and void.**

(Eles Decl. ¶ 12, Exh. 3 (emphasis in original).)

**2.      <u>Mr. Uharriet's Agreement To Arbitrate</u>.**

During counsel's meet and confer efforts leading up to this Motion, Mr. Uharriet's counsel indicated that Mr. Uharriet never registered with MyLife, and that his counsel did so in Mr. Uharriet's name. (Gorham Decl., ¶ 7.) MyLife is in possession of some evidence to support counsel's representation, as a private email address was submitted to MyLife during the registration process that contains the last name of one of Mr. Uharriet's counsel of record, and that same counsel registered an account in his own name on the same day Mr. Uharriet's account was created. (Eles Decl., ¶ 8, Ex. 1.) However, as of the date of this Motion MyLife has not received any sworn statements from Mr. Uharriet or his counsel regarding Mr. Uharriet's registration.

/ / /

/ / /

5

III.   **ARGUMENT**

    A.    **The Court Should Order Mr. Uharriet's Claims To Arbitration.**

        1.    **Mr. Uharriet's Agreement To Arbitrate Is Binding, Even If Made By His Agent.**

The Court must determine whether Mr. Uharriet agreed to arbitrate his disputes with MyLife as a threshold matter. As an account was created in Mr. Uharriet's name, he appears to have registered as a user of MyLife, and agreed to the arbitration provision in the User Agreement. Assuming that Mr. Uharriet submits admissible evidence in opposition to this Motion indicating that he did not register with MyLife, and that his counsel did so in Mr. Uharriet's name, the Court must then determine whether counsel was an authorized agent who agreed to arbitration on his client's behalf.

A lawyer is a client's agent. *Clark v. Andover Sec.,* 44 F. App'x 228, 231 (9th Cir. 2002). Under California law, "[a]n agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to principal." Cal. Civ. Code § 2330. A principal thus cannot avoid an arbitration agreement by sending his agent to act on his behalf. *Keller Constr. Co. v. Kashani,* 220 Cal. App. 3d 222, 225-27 (1990); *Letizia v. Prudential Bache Sec., Inc.,* 802 F.2d 1185, 1187-88 (9th Cir. 1986); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.,* No. 16-1953, 2020 WL 6528422, at *4 (C.D. Cal. Oct. 20, 2020).

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.,* No. 18-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019), is instructive. Uber moved to compel arbitration on the grounds that the plaintiffs' agent – a paralegal at the office representing plaintiffs – agreed to Uber's terms of service. *Id.,* at *4. The court held that because the plaintiffs had "dispatched their

agents to affirmatively test the Uber application in order to bolster their claim of discrimination," the plaintiffs were "bound by the arbitration agreement to the same extent as their agent." *Id.*[1]

MyLife is mindful that similar, if not identical, issues were raised in a separate proceeding in the Northern District in *Callahan v. PeopleConnect, Inc.*, 2021 U.S. Dist. LEXIS 1979161 (May 18, 2021), in which plaintiffs were represented by some of the same counsel representing plaintiffs in this case. In that case, Judge Chen ruled that where counsel declared that he created the account that gave rise to the arbitration provision, and the plaintiff declared that he did not create the account and did not authorize his counsel to do so, then the client is not bound to the arbitration agreement. *Id.*, at *13-14. PeopleConnect appealed, that appeal is pending, and the District Court action is stayed. *See* Docket for *Callahan* Action, Gorham Decl. ¶ 8, Ex. 5, Nos. 47 (Notice of Appeal) and 88 (Order Granting Motion to Stay.) To the extent this Court rules that Mr. Uharriet did not agree to arbitration, then MyLife wishes to preserve its rights pending the outcome of the appeal in *Callahan*.

### 2.     <u>The Federal Arbitration Act Requires Arbitration Of Mr. Uharriet's Claims</u>.

Assuming the Court finds that Mr. Uharriet agreed to arbitrate his claims against MyLife, then arbitration is mandated by the Federal Arbitration Act ("FAA"), which broadly applies to any written arbitration agreement in a contract involving, directly or indirectly, interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *see also* 9 U.S.C. §§ 1-2. Section 2 of the FAA mandates that binding arbitration provisions in contracts

---

[1]  To the extent factual issues must be resolved for the Court to rule on MyLife's Motion, MyLife requests leave to engage in limited discovery regarding Mr. Uharriet's knowledge of and acquiescence to his counsel's use of MyLife.com on his behalf. *See* Order, *Indep. Living Res. Ctr. S.F. v. Uber Techs., Inc.,* No. 18-06503 (N.D. Cal. May 6, 2019), ECF No. 35 (denying motion to compel arbitration without prejudice, but granting "limited discovery" to "clarify the issue" of whether the "testers were Plaintiffs' agents").

7

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
OR ALTERNATIVELY, TO STAY OR DISMISS**

"evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2

[of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on

equal footing with all other contracts."); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

344 (2011) ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and

enforceable' as written . . . "). The Supreme Court has repeatedly recognized the FAA is extremely

broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g.,*

*Allied-Bruce Terminix Cos.,* 513 U.S. at 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg.*

*Co.*, 388 U.S. 395, 401 (1967).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions

of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v.*

*Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements falling within scope of FAA "must be

'rigorously enforce[d]'" (citations omitted)); *AT&T Mobility LLC*, 563 U.S. at 339, 345–46. In fact,

the Supreme Court has confirmed that the "'principal purpose' of the FAA is to 'ensur[e] that

private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC*, 563

U.S. at 344. The FAA "leaves no place for the exercise of discretion by a district court, but instead

mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter*

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate

review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater

efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (citations omitted). Thus, "parties may agree to limit the issues subject to arbitration [citation], to arbitrate according to specific rules [citation], and to limit with whom a party will arbitrate its disputes [citation]." *AT&T Mobility LLC*, 563 U.S. at 344 (citations omitted). Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen S.A.*, 559 U.S. at 684.

An arbitration provision governed by the FAA is presumed to be valid and enforceable. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). Here, Mr. Uharriet bears the burden of showing the Arbitration Provision is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1364 (S.D. Fla. 2009). Mr. Uharriet cannot contend that the User Agreement, which includes the arbitration provision, was ineffective or invalid, and even if he did, the Arbitration Provision delegates that issue, and all others, to the arbitrator. (Eles Decl., ¶ 12, Ex. 3 at ¶ 7 ("All issues are for the arbitrator to decide, including the scope of this arbitration clause. . . ").)

An arbitration agreement is specifically enforceable under the FAA if the following requirements are met: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2. Each of these elements is clearly satisfied in this case.

The first requirement is met here because the User Agreement accepted by Mr. Uharriet contained a written arbitration agreement. *See* 9 U.S.C. § 2; *see also Caley v. Gulfstream Aerospace*

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
OR ALTERNATIVELY, TO STAY OR DISMISS

*Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (discussing the "in writing" requirement of the FAA). The second FAA requirement is also satisfied because the claims at issue clearly involved and affected interstate commerce. This requirement is interpreted expansively: "The broad authority of Congress under the Commerce Clause has, of course, long been interpreted to extend beyond activities actually *in* interstate commerce to reach other activities, while wholly local in nature, nevertheless substantially *affect* interstate commerce." *McClain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 241-42 (1980) (emphasis in original). Mr. Uharriet asserts that MyLife's business practices extend nationwide, and he seeks certification of a nationwide class.

The third requirement also is met, as the Arbitration Provision broadly encompasses all disputes, however this is a matter expressly reserved for the arbitrator's determination. Paragraph 7 of the User Agreement specifies: "**All issues are for the arbitrator to decide, including the scope of this arbitration clause**. . . ." (Eles Decl. ¶ 12, Exh. 3 (emphasis in original).) Where an arbitration agreement contains a delegation provision that vests in an arbitrator the authority to determine the validity and enforceability of the arbitration agreement, those threshold issues must be compelled to arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-71 (2010). When parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

In *Rent-A-Center*, the United States Supreme Court acknowledged the right of parties to include delegation clauses in arbitration agreements, whereby they "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69 (citing *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83-85 (2002)). To be enforceable, such delegation clauses are

subject to a heightened standard, *i.e.*, the parties' intent to arbitrate the issue of arbitrability must be demonstrated by "clear and unmistakable evidence." *Id.* at 79; *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted). Unless a party specifically and discretely challenges a clear and unmistakable delegation of authority to the arbitrator, any challenge to the validity or enforceability of the entire arbitration agreement is subject to arbitration and must be left for the arbitrator to resolve. *Rent-A-Center*, 561 U.S. at 70-71.

It is clear and unmistakable that the Arbitration Agreement delegates the gateway determinations of arbitrability of Mr. Uharriet's claims, as well as questions of the arbitrability, interpretation and scope of the Arbitration Agreement, to the arbitrator. The User Agreement clearly and unmistakably indicates that "[a]ll issues are for the arbitrator to decide, including the scope of this arbitration clause." This is a typical broad delegation provision concerning the threshold issue of arbitrability, and according to the overwhelming authority, the Court must compel arbitration of Mr. Uharriet's claims without addressing the merits of the Mr. Uharriet's potential challenges to arbitrability or the validity or enforceability of the agreement to arbitrate.

### 3.      The Case Should Be Stayed Pending Arbitration Of Mr. Uharriet's Claims.

The Court should exercise its discretion to stay any non-arbitrable claims while arbitration between MyLife and Mr. Uharriet proceeds because an arbitration decision may affect the outcome of the claims by other Plaintiffs, and a stay will conserve judicial resources because there is a common nucleus of facts. As stated in *Moses H. Cone Memorial Hospital*, 460 U.S. at 20-21, n. 3, "[i]n some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket."

*See also Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 917 (N.D. Cal. 2011) (quoting *Moses H. Cone*).

**B.**     **Alternatively, The Court Should Dismiss Mr. Uharriet's Claims Under The Communications Decency Act.**

Section 230 of the Communications Decency Act ("CDA") provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It further provides that "[n]o cause of action may be brought and no liability may be imposed under any . . . law that is inconsistent with this section." *Id*. § 230(e)(3).

Courts in the Ninth Circuit have applied Section 230 broadly as creating immunity to service providers against claims seeking to hold them liable for publishing information online that originates from third parties. *See, e.g. Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) ("intrusion upon seclusion," California Unfair Competition Law); *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1122, 1125 (9th Cir. 2003) (California right of publicity); *Jurin v. Google Inc*., 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (unjust enrichment).

The Ninth Circuit has read Section 230 "to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (quotation marks and citation omitted, emphasis added). District courts within the Ninth Circuit have held that "the immunity extends to all claims stemming from an interactive computer service provider's publication of content created by third parties." *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2021 WL 493387, at *4 (N.D. Cal. Feb. 10, 2021); *see also Goddard v. Google, Inc*., No. 08-cv-02738-JF, 2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008)

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
OR ALTERNATIVELY, TO STAY OR DISMISS

("[P]arties complaining that they were harmed by a Web site's publication of user-generated content ... may sue the third party user who generated the content, but not the interactive computer service that enabled them to publish the content online." (quotation marks and citation omitted)).

The CDA "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (internal quotations and citation omitted).

The first element is met on the face of the FAC. MyLife is an "interactive computer service," defined in the statute as an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." 47 U.S.C. § 230(f)(2). Here, the FAC describes an interactive process on the MyLife Website that is the basis for Plaintiffs' claims. Plaintiffs allege that MyLife's *responds* to users who click on Plaintiffs' names. (FAC, ECF 18, at ¶40, 64, 86, 110.) Plaintiffs further allege that in response to a third party searching for one of the Plaintiffs, MyLife communicates with that Plaintiff. (*Id*., at ¶40, 67, 91, 115.) This is the essence of an interactive service.

MyLife and its competitors already have been found by other courts to be interactive computer services. *See Shah v. MyLife.Com, Inc.*, No. 12-1592, 2012 WL 4863696, at *3 (D. Or. Sept. 21, 2012), *report and recommendation adopted*, 2012 WL 4863271 (D. Or. Oct. 11, 2012) (MyLife immune from suit under Section 230 as it "f[e]ll within the definition of an 'interactive computer service'"); *Henderson v. Source for Pub. Data*, No. 20-294, 2021 WL 2003550, at *5 (E.D. Va. May 18, 2021) (holding that several of MyLife's competitors are immune from FCRA

claims pursuant to Section 230 as their "status as an interactive computer service is not lost merely because they have [gathered] the data or edit it like a publisher or distributor in its traditional capacity"); *Obado v. Magedson*, No. 13-2382, 2014 WL 3778261, at *4 (D.N.J. July 31, 2013) ("no dispute" that Intelius, a MyLife competitor, is a "provider[] of an interactive computer service"), aff'd 612 F. 90 (3$^d$ Cir. 2015). Most recently this same finding was made in the District of New Jersey in *Dennis v. MyLife.com, Inc.*, 2021 U.S. Dist. LEXIS 243050 (D.N.J. Dec. 20, 2021) at 14-19 (granting Motion to Dismiss based on CDA and finding "as [MyLife] enables consumers to access and search through various databases on its website, it constitutes an interactive service provider. . .").

The second element required for immunity under the CDA is that Plaintiffs "seek[] to treat, under a state law cause of action, as a publisher or speaker." The theory for relief is that MyLife discloses certain information.

The final element required for Plaintiffs' claims to be barred by the CDA is satisfied because "the challenged communication [is] information provided by another information content provider." The FAC acknowledges that MyLife disclosed that it "aggregates publicly available information from government, social, and other sources, plus personal reviews written by others" (FAC, ¶ 12), and that Plaintiffs "do not know" any facts to the contrary. (FAC, ECF 18, at 4, ¶ 12.) Screenshots from the MyLife Website included in the FAC disclose that MyLife gathers "public reputation and background info." (*Id.* at 13, ¶ 41) *See Gentry v. eBay, Inc.*, 121 Cal.Rptr.2d 703, 717-718 (2002) (finding that eBay was not the content provider for a score listed on its site as the scores were based solely on information from third parties).

 Thus, as the court held in *Shah v. MyLife.com, Inc*., MyLife "cannot be sued for simply republishing information provided by third parties, including any claim under state law for

invasion of privacy by an internet posting of person information obtained from another party."

2012 WL 4863696, at *3.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should order Mr. Uharriet's claims to arbitration, and stay this case pending arbitration. Alternatively this case should be dismissed pursuant to the Communications Decency Act.

Dated: December 23, 2021                    RASKIN GORHAM ANDERSON LAW

By: _____
                                            Gary J. Gorham
                                            Attorneys of Record for Defendant
                                            MYLIFE.COM, INC.