1
2
3
4

SEYFARTH SHAW LLP
Steven A. Erkel (SBN 299263)
serkel@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, California 95814-4428
Telephone:     (916) 448-0159
Facsimile:      (916) 558-4839

5
6
7
8
9

SEYFARTH SHAW LLP
Pamela Q. Devata (*pro hac vice*)
pdevata@seyfarth.com
John W. Drury (*pro hac vice*)
jdrury@seyfarth.com
233 South Wacker Drive, Ste. 8000
Chicago, IL  60606
Telephone:     (312) 460-5000
Facsimile:      (312) 460-7000

10
11
12
13
14

RASKIN GORHAM ANDERSON LAW
Gary J Gorham
ggorham@raskinlawllp.com
11333 Iowa Ave.
Los Angeles, CA 90025
310-202-5544

Attorneys for Defendant,
MyLife.com, Inc.

15
16
17
18
19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

20
21
22
23
24
25
26
27
28

| JAMES UHARRIET, AVIVA KELLMAN, ALISON BOCKIUS, and KAREN EVANS, on behalf of themselves and all others similarly situated, | Case No. 3:21-cv-08229-VC |
|---|---|
| Plaintiff, | [Assigned for all purposes to Hon. Vince Chhabria] |
| v. | **DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES** |
| MyLife.com, Inc., | |
| Defendant. | Complaint Filed: October 21, 2021 FAC Filed: December 3, 2021 |

1    Defendant MyLife.com, Inc. ("Defendant"), by and through its attorneys, hereby submits its

2    Answer to the First Amended Complaint and Affirmative and Additional Defenses as follows:

3

4                                        **NATURE OF ACTION**

5        **COMPLAINT ¶1:**

6        Plaintiffs and members of the proposed classes ("Class Members") are private individuals who
     have no relationship with the Defendant MyLife.com, Inc. ("Defendant" or "MyLife") or the website it
7    owns and operates at www.mylife.com. Plaintiffs and Class Members have never used mylife.com, nor
     did they provide their names, ages, addresses, photographs, or any other personal information to MyLife.
8
     **ANSWER:**
9
         In response to Paragraph 1 of the First Amended Complaint ("FAC"), Defendant admits that
10
     Plaintiffs purport to bring this matter as a class action.  Defendant further states that the claims in this
11
     action cannot be maintained on behalf of any class.  Defendant further denies the allegations in Paragraph
12
     1 as to Plaintiff Uharriet.  As to the remaining allegations, Defendant states that it is without knowledge
13
     or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and,
14
     on that basis, denies, generally and specifically, each and every remaining allegation in this Paragraph.
15
         **COMPLAINT ¶2:**
16
         Plaintiffs were seriously distressed to discover that MyLife is using their names, personal
17   information, and personas to advertise paid subscriptions to its website. MyLife's advertisements suggest
     that Plaintiffs have criminal records and may be on sex offender lists.
18
     **ANSWER:**
19
         Defendant denies the allegations in Paragraph 2 of the FAC as they relate to Plaintiffs'
20
     characterization of Defendant's website.  Defendant further states that it is without knowledge or
21
     information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations regarding their
22
     alleged "distress," and, on that basis, denies, generally and specifically, such allegations.  Defendant
23
     denies all remaining allegations in this Paragraph.
24
         **COMPLAINT ¶3:**
25
         Plaintiffs and Class Members did not consent to MyLife using their names, personal information,
26   photographs, and personas to advertise website subscriptions or any other product.

27

28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

**ANSWER:**

In response to Paragraph 3 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶4:**

MyLife advertises its website by publicly displaying teaser profiles of Plaintiffs and Class Members with their names, ages, current and past cities of residence, workplaces, and other personal information. Some teaser profiles include photographs.

**ANSWER:**

In response to Paragraph 4 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers to the website for its contents, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶5:**

MyLife advertises that it possesses additional information about Plaintiffs and Class Members including: "embarrassing online photos that [Plaintiff or Class Member] doesn't want you to see"; "Negative Items on [Plaintiffs or Class Member's] Public Reputation Profile"; "sensitive information & graphic content" such as their "Sex Offender Status"; "Criminal & civil court records" including "Felonies" and "Misdemeanors"; "satellite pictures" of their "known addresses"; the identities of their "spouse, parents, siblings, children, grandparents, & other family members"; and their "Financial Data" including "estimated income, net worth, [and] home value." MyLife advertises that if users purchase a subscription plan starting at $10.95 per month, they will receive access to a full profile including this additional information about Plaintiffs and Class Members, as well as full profiles containing similar information about millions of other individuals.

**ANSWER:**

In response to Paragraph 5 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers to the website for its contents, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶6:**

Defendant also uses Plaintiffs' and Class Members' personal information and personas to advertise its "Premium Membership" service. Only by purchasing Defendant's "Premium Membership," which requires monthly payments of $7.95, can subscribers modify, remove, or prevent others from seeing potentially embarrassing or harmful personal information about the subscriber on mylife.com.

1   **ANSWER:**

2          In response to Paragraph 6 of the FAC, Defendant denies that the allegations in this Paragraph

3   completely and accurately describe Defendant's website, refers to the website for its contents, and denies

4   any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

5          **COMPLAINT ¶7:**

6          MyLife publishes a "Reputation Score" associated with Plaintiffs and Class Members. The
    "Reputation Score" is determined by MyLife and is purportedly based on the personal information MyLife
7   has gathered about Plaintiffs and Class Members. MyLife advertises that users who pay $10.95 per month
    will receive, as part of their subscription, access to the "Reputation Scores" of Plaintiffs, Class Members,
8   and millions of additional individuals. MyLife advertises that users who pay $7.95 for a "Premium
    Membership" will receive the ability to "Correct, Enhance & Monitor" their "Reputation Score," which
9   MyLife claims "could affect your life both personally and professionally."

10  **ANSWER:**

11         In response to Paragraph 7 of the FAC, Defendant admits that it displays a reputation score with

12  individual profiles but denies that the allegations in this paragraph completely and accurately describe

13  Defendant's website or the process for display of a reputation score.  Defendant refers Plaintiff to its

14  website for its content and denies any allegations inconsistent therewith.  Defendant denies any remaining

15  allegations in this Paragraph.

16         **COMPLAINT ¶8:**

17         MyLife does not present Plaintiffs' and Class Members' profiles as "samples" advertising the
18  purchase of a single profile containing additional information. Rather, MyLife uses Plaintiffs' and Class
    Members' names and personas to advertise subscriptions to mylife.com.

19  **ANSWER:**

20         In response to the first sentence in Paragraph 8 of the FAC, Defendant denies that the allegations

21  in this sentence completely and accurately describe Defendant's website, refers to the website for its

22  contents, and denies any allegations inconsistent therewith.  Defendant denies the remaining allegations

23  in this Paragraph.

24         **COMPLAINT ¶9:**

25         At a cost of $10.95 per month, a mylife.com subscription includes far more than access to the
26  profile of the individual whose persona MyLife used to advertise the subscription. A subscription delivers
    access to the full profiles of millions of individuals, including potentially embarrassing information,
27  "Reputation Scores" determined by MyLife, and the ability to "See everyone else who is also looking at"
    each profile.

28

4

1

**ANSWER:**

2

      In response to Paragraph 9 of the FAC, Defendant denies that the allegations in this Paragraph

3

completely and accurately describe Defendant's website, refers to the website for its contents, and denies

4

any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

5

      **COMPLAINT ¶10:**

6

      At a cost of $7.95 per month, a "Premium Membership" subscription to MyLife delivers not just

7

access to one's own profile, but a variety of services purportedly designed to improve the subscriber's
online reputation. The advertised services include the ability to: "Correct Background Facts & Edit" the
subscriber's MyLife profile; "lock[] sections" of the subscriber's profile from being seen by others;

8

display an "Excellent Reputation Badge Publicly" on the subscriber's profile; and "See Who's Searching
for" the subscriber.

9

**ANSWER:**

10

      In response to Paragraph 10 of the FAC, Defendant denies that the allegations in this Paragraph

11

completely and accurately describe Defendant's website, refers to the website for its contents, and denies

12

any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

13

      **COMPLAINT ¶11:**

14

      MyLife is the sole author, designer, and implementor of the advertising techniques and messages

15

giving rise to this lawsuit. MyLife does not host user-generated content on or in any part of the website
relevant to this lawsuit. MyLife is the sole curator, designer, and creator of the content described in this

16

Complaint, including the teaser profiles representing Plaintiffs and Class Members, the "Reputation

17

Scores" corresponding to Plaintiffs and Class Members, and the advertisements soliciting subscriptions.

**ANSWER:**

18

      In response to Paragraph 11 of the FAC, Defendant denies that the allegations in this Paragraph

19

completely and accurately describe Defendant's website, refers to the website for its contents, and denies

20

any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

21

      **COMPLAINT ¶12:**

22

      Plaintiffs do not know how MyLife obtained their names, cities of residence, names of relatives,

23

and additional personal information. MyLife states on its website that it "aggregates publicly available
information from government, social, and other sources, plus personal reviews written by others." MyLife

24

does not disclose specific sources.

25

**ANSWER:**

26

      In response to Paragraph 12 of the FAC, Defendant admits that it does not disclose on its website

27

the source of publicly-available information, and admits the language quoted is a partial representation of

28

79406372v.4

Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers to the website for its contents, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶13:**

MyLife misappropriated Plaintiffs' and Class Members' names, personal information, and personas without permission or consent from Plaintiff or Class Members. Indeed, Plaintiffs and Class Members must pay money to MyLife to have some of their personal information removed. Yet even after "Premium Membership" subscribers have paid this unconscionable fee, MyLife continues to advertise using a teaser profile of the subscriber.

**ANSWER:**

In response to Paragraph 13 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶14:**

Consent is not all or nothing. Plaintiffs and Class Members may have shared their names, addresses, and other personal information with companies or the government in a variety of contexts. For example, Plaintiffs or Class Members may have shared their names and addresses with a private company when making a credit card purchase.

**ANSWER:**

In response to Paragraph 14 of the FAC, Defendant states that the allegations contained therein are not directed at Defendant and therefore no response is required.  To the extent a response is deemed necessary, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, on that basis, denies, generally and specifically, each and every remaining allegation in this Paragraph.

**COMPLAINT ¶15:**

But Plaintiffs and Class Members did not consent to the commercial use of their personal information and personas to promote subscriptions to a website with which they have no relationship. MyLife makes money by (1) peddling purportedly embarrassing personal information; and (2) pressuring subscribers into paying to remove embarrassing information from MyLife and improve their "Reputation Scores," which are entirely invented by MyLife. Plaintiffs and Class Members did not consent to the use of their personas to promote MyLife's unethical schemes.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

**ANSWER:**

In response to Paragraph 15 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

### COMPLAINT ¶16:

California, Nevada, and Ohio law recognize the intellectual property and privacy rights of individuals in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

**ANSWER:**

In response to Paragraph 16 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant refers to the authorities referenced in this Paragraph and denies the allegations in this Paragraph to the extent they are inconsistent the referenced authorities.

### COMPLAINT ¶17:

By using Plaintiffs' and Class Members' names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, MyLife has violated their intellectual property and privacy rights. Plaintiffs and Class Members have the right not to have their personas exploited to promote a product with which they have no relationship and no interest in supporting. Plaintiffs and Class Members have an economic interest in their personas, which MyLife has stolen, and a privacy interest in their personas, which MyLife has violated.

**ANSWER:**

In response to Paragraph 17 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph, and specifically denies that it violated any law.

### COMPLAINT ¶18:

By these actions, MyLife has violated California's Right of Publicity statute, codified in Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; Ohio's Right of Publicity statute, codified in Ohio Rev. Code § 2741; Ohio common law prohibiting misappropriation of a name or likeness; Nevada's Right of Publicity statute, codified in Nev. Rev. Stat. §§ 597.790 *et seq*.; and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiffs and Class Members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through MyLife's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind. Plaintiffs and Class Members are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their

1   names and personas, an injunction prohibiting MyLife's unlawful conduct, an award of attorneys' fees,

2   expenses, and costs, and declaratory and injunctive relief.

3   **ANSWER:**

4           In response to Paragraph 18 of the FAC, Defendant states that the allegations contained therein

5   consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

6   Defendant denies the allegations in this Paragraph, and specifically denies that it violated any alw.

7
8
9   

**JURISDICTION AND VENUE**

        **COMPLAINT ¶19:**

        This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action

10  Fairness Act ("CAFA")), because: (A) at least one Class Member is a citizen of a state different from at

11  least one defendant. Defendant MyLife is incorporated in Delaware and has its principal place of business

12  in Los Angeles, California. Plaintiffs assert claims on behalf of a nationwide class, which includes
    members from every state in the country. (B) Each of the proposed Classes — including the two proposed

13  sub-Classes limited to residents of Ohio and Nevada — consists of at least 100 members. And (C) the

14  amount in controversy exceeds $5,000,000 exclusive of interest and costs based on the California statutory
    claims alone. Cal. Civ. Code § 3344 provides for statutory damages "equal to the greater of seven hundred

15  fifty dollars ($750) or the actual damages suffered," as well as "any profits from the unauthorized use."
    The statute also allows for punitive damages and an award of attorneys' fees and costs. Because MyLife

16  is a California corporation using the names and personal information of hundreds of millions of individuals
    to advertise its website, the amount in controversy is well over the jurisdictional limit.

17  **ANSWER:**

18          In response to Paragraph 19 of the FAC, Defendant states that the allegations contained therein

19  consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

20  Defendant is without knowledge or information sufficient to form a belief as to the truth of facts potentially

21  giving rise to subject matter jurisdiction for Plaintiffs and putative class members in this action.

22  Defendant denies any remaining allegations in this Paragraph.

23          **COMPLAINT ¶20:**

24          This Court has general personal jurisdiction over MyLife because its headquarters and principal
    place of business are in this state.

25  **ANSWER:**

26          In response to Paragraph 20 of the FAC, Defendant states that the allegations contained therein

27  consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

Defendant admits that it is subject to the Court's personal jurisdiction in this action.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶21:**

This Court has specific personal jurisdiction over MyLife because a significant portion of the events giving rise to this lawsuit occurred in this state, including: MyLife's design and creation of the advertisements incorporating Plaintiffs' and Class Members' names, likenesses, and personas; MyLife's copying of Plaintiffs' and Class Members' personal information from a variety of online sources; MyLife's display of Plaintiffs' and Class Members' teaser profiles in advertisements available to the public online; MyLife's failure to obtain required consent from Class Members who reside in California; and MyLife's violation of the intellectual property rights of Class Members who reside in California.

**ANSWER:**

In response to Paragraph 21 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant admits that it is subject to the Court's personal jurisdiction in this action.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶22:**

Plaintiffs Uharriett and Kellman reside in this state and District. MyLife violated their intellectual property rights and misappropriated their names, personal information, and personas, the locus of which is in this state and District. MyLife failed to obtain the required consent from Plaintiffs Uharriett and Kellman in this state and District. MyLife displayed the advertisements using Plaintiffs' names, personal information, and personas in this state and District.

**ANSWER:**

In response to Paragraph 22 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence and, on that basis, denies, generally and specifically, each and every allegation contained therein.  Defendant further denies the remaining allegations in the Paragraph.

**COMPLAINT ¶23:**

Plaintiffs Bockius and Evans do not reside in California. However, Mylife's illegal use of Plaintiff Bockius' and Evans' names, likenesses, photographs, and personas in advertisements for website subscriptions without their consent in violation of their intellectual property and privacy rights originated from and was directed by MyLife from its California headquarters.

**ANSWER:**

In response to Paragraph 23 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence and,

79406372v.4

on that basis, denies, generally and specifically, each and every allegation contained therein.  Defendant further denies the remaining allegations in the Paragraph.

**COMPLAINT ¶24:**

Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district.

**ANSWER:**

In response to Paragraph 21 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies that venue is appropriate in this Court.

**PARTIES**

**COMPLAINT ¶25:**

Plaintiff James Uharriet is a citizen of California. Mr. Uharriet resides in San Mateo, California. Mr. Uharriet has never used or subscribed to the website mylife.com. MyLife publicly displays a teaser profile of Mr. Uharriet's personal information, including his name, city of residence, and relatives' names, which it uses to advertise subscriptions. MyLife claims to be in possession of additional information about Mr. Uharriet, including his "Sex Offender Status," his supposed "Felonies" and "Misdemeanors," "satellite pictures" of his current and past addresses, "estimated income, net worth, [and] home value," and "embarrassing online photos that James doesn't want [the user] to see." MyLife advertises subscriptions to its website by promising subscribers the ability to view, modify, or block this additional potentially embarrassing information about Mr. Uharriet.

**ANSWER:**

In response to Paragraph 25 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first three sentences of this Paragraph and, on that basis, denies, generally and specifically, each and every allegation contained therein.  As to the other allegations in this Paragraph, Defendant denies that those allegations completely and accurately describe Defendant's website, refers to the website for its contents, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶26:**

Plaintiff Aviva Kellman is a citizen of California. Ms. Kellman resides in Alameda, California. Ms. Kellman has never used or subscribed to the website mylife.com. MyLife publicly displays a teaser profile of Ms. Kellman's personal information, including her name, city of residence, and relatives' names, which it uses to advertise subscriptions. MyLife claims to be in possession of additional information about Ms. Kellman, including her "Sex Offender Status," her supposed "Felonies" and "Misdemeanors," "satellite pictures" of her current and past addresses, "estimated income, net worth, [and] home value," and "embarrassing online photos that Aviva doesn't want [the user] to see." MyLife advertises

subscriptions to its website by promising subscribers the ability to view, modify, or block this additional potentially embarrassing information about Ms. Kellman.

**ANSWER:**

In response to Paragraph 26 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first and second sentences and, on that basis, denies, generally and specifically, each and every allegation contained therein. As to the other allegations in this Paragraph, Defendant denies that those allegations completely and accurately describe Defendant's website, refers to the website for its contents, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶27:

Plaintiff Alison Bockius is a citizen of Nevada. Ms. Bockius resides in Henderson, Nevada. Ms. Bockius has never used or subscribed to the website mylife.com. MyLife publicly displays a teaser profile of Ms. Kellman's personal information, including her name, city of residence, and relatives' names, which it uses to advertise subscriptions. MyLife claims to be in possession of additional information about Ms. Bockius, including her "Sex Offender Status," her supposed "Felonies" and "Misdemeanors," "satellite pictures" of her current and past addresses, "estimated income, net worth, [and] home value," and "embarrassing online photos that Aviva doesn't want [the user] to see." MyLife advertises subscriptions to its website by promising subscribers the ability to view, modify, or block this additional potentially embarrassing information about Ms. Bockius.

**ANSWER:**

In response to Paragraph 27 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first or second sentence and, on that basis, denies, generally and specifically, each and every allegation contained therein. As to the other allegations in this Paragraph, Defendant denies that those allegations completely and accurately describe Defendant's website, refers to the website for its contents, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶28:

Plaintiff Karen Evans is a citizen of Ohio. Ms. Evans resides in Westerville, Ohio. Ms. Evans has never used or subscribed to the website mylife.com. MyLife publicly displays a teaser profile of Ms. Evans' personal information, including her name, city of residence, and relatives' names, which it uses to advertise subscriptions. MyLife claims to be in possession of additional information about Ms. Evans, including her "Sex Offender Status," her supposed "Felonies" and "Misdemeanors," "satellite pictures" of her current and past addresses, "estimated income, net worth, [and] home value," and "embarrassing online photos that Karen doesn't want [the user] to see." MyLife advertises subscriptions to its website by promising subscribers the ability to view, modify, or block this additional potentially embarrassing information about Ms. Evans.

11

**ANSWER:**

In response to Paragraph 28 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first and second sentences and, on that basis, denies, generally and specifically, each and every allegation contained therein.  As to the other allegations in this Paragraph, Defendant denies that those allegations completely and accurately describe Defendant's website, refers to the website for its contents, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶29:**

Defendant MyLife.com, Inc. is a Delaware corporation with its headquarters in Los Angeles, California. Defendant owns and operates the website mylife.com.

**ANSWER:**

In response to Paragraph 29 of the FAC, Defendant admits the allegations contained therein.

**GOVERNMENT ACTION**

**COMPLAINT ¶30:**

On July 27, 2020, the Federal Trade Commission ("FTC") and Department of Justice ("DOJ") jointly sued MyLife and its founder Jeffrey Tinsely.[1] The Complaint alleges that, since 2009, MyLife has "sold their consumer background reports primarily by allowing users of their website to run free background searches for an individual's name, and then displaying search results that imply, often falsely, that the subject of a search may have records of criminal or sexual offenses—records that can only be viewed only by buying a MyLife subscription."[2]

**ANSWER:**

In response to Paragraph 30 and its footnotes, Defendant states that the allegations contained therein are legal conclusions, and therefore no response is required.  To the extent a response is required, Defendant admits that Plaintiffs have accurately quoted language from the July 27, 2020 Federal Trade Commission's and Department of Justice's Complaint.  Defendant further states that the Complaint speaks for itself and denies all wrongdoing alleged therein.

**COMPLAINT ¶31:**

The FTC and DOJ Complaint further alleges that "MyLife search results also include a 'Reputation Score' about a searched-for individual purportedly based on 'public information, gathered from

---

[1] *United States vs. MyLife.com, Inc. and Jeffrey Tinsley*, 2:20-cv-06692 (C.D. Cal. complaint filed July 27, 2020).

[2] *Id.*, ECF No. 1 at ¶ 7.

79406372v.4

government, social, and other sources, plus personal reviews written by others.' Told that `[reputation is more important than credit[,]' and lured by the prospect of paying a relatively small fee to uncover the individual's legal or criminal history and other information, American consumers have paid millions of dollars for MyLife premium subscriptions."[3]

**ANSWER:**

In response to Paragraph 31 and its footnote, Defendant states that the allegations contained therein are legal conclusions, and therefore no response is required.  To the extent a response is required, Defendant admits that Plaintiffs have accurately quoted language from the July 27, 2020 Federal Trade Commission's and Department of Justice's joint Complaint.  Defendant further states that the Complaint speaks for itself and denies all wrongdoing alleged therein.

**COMPLAINT ¶32:**

While Plaintiffs' complaint arises from some of the same facts as the FTC and DOJ Complaint, the two complaints state claims under different laws protecting different legal rights. The FTC and DOJ Complaint states causes of action under the FTC Act, the Telemarketing Sales Rule, the Restore Online Shoppers' Confidence Act, and the Fair Credit Reporting Act.[4] It does not address the Right of Publicity.

**ANSWER:**

In response to Paragraph 32 and its footnote, Defendant states that the allegations contained therein are legal conclusions, and therefore no response is required.  To the extent a response is required, Defendant denies the allegations contained in this Paragraph.


**FACTUAL ALLEGATIONS**

A.    **James Uharriet**

**COMPLAINT ¶33:**

Plaintiff James Uharriet has no relationship with MyLife. He is not a subscriber and has never used mylife.com.

**ANSWER:**

Defendant denies the allegations in Paragraph 33 of the FAC.

---

[3] *Id*.

[4] *Id*., at ¶¶ 39-72.

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### COMPLAINT ¶34:

Mr. Uharriet has never agreed to MyLife's Terms of Service, nor has he agreed to any arbitration agreement with MyLife. Mr. Uharriet has never authorized anyone to create a MyLife account on his behalf. Mr. Uharriet has never authorized anyone to agree to arbitration with MyLife on his behalf.

**ANSWER:**

In response to Paragraph 34, Defendant states that the allegations contained therein are legal conclusions to which no response is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

### COMPLAINT ¶35:

Mr. Uharriet did not give consent to MyLife to use his name, likeness, personal information, or persona in any way. Had MyLife requested his consent, Mr. Uharriet would not have provided it.

**ANSWER:**

In response to Paragraph 35, Defendant states that the allegations contained therein are legal conclusions to which no response is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

### COMPLAINT ¶36:

MyLife uses Mr. Uharriet's name and persona in advertisements promoting its website subscriptions. MyLife publicly displays a teaser profile of personal information about Mr. Uharriet. The teaser profile states his name, city of residence, and names of his relatives. The teaser profile uniquely identifies Mr. Uharriet. A screenshot depicting the teaser profile is shown below. Mr. Uharriet's profile is the second search result. For privacy, Plaintiffs' counsel have redacted the first search result and the names of Mr. Uharriet's relatives.

**ANSWER:**

In response to Paragraph 36 of the FAC, Defendant admits that the image included therein is a partial representation of Defendant's website at one point in time. Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶37:

MyLife provides a publicly accessible landing page at mylife.com on which users may search, and have searched, for Mr. Uharriet by name, location, and contact information.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

**ANSWER:**

In response to Paragraph 37 of the FAC, Defendant admits that the image included therein is a partial representation of Defendant's website at one point in time, that a user can enter Mr. Uharriet's name to search for information about that name, and that at least one user has done so.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶38:**

Users who searched for Mr. Uharriet received the teaser profile uniquely identifying Mr. Uharriet by name, city of residence, and names of his relatives.

**ANSWER:**

In response to Paragraph 38 of the FAC, Defendant admits that users searching for Mr. Uharriet were able to access certain limited information.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶39:**

MyLife uses Mr. Uharriet's teaser profile in two advertising techniques. In its <u>first</u> advertising technique, MyLife uses Mr. Uharriet's name, personal information, and persona to advertise a website subscription providing access to additional information about Mr. Uharriet and hundreds of millions of other individuals.

**ANSWER:**

In response to Paragraph 39 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶40:**

Users who click on either "James Thomas Uharriet" or the button marked "View Reputation Profile" are shown a series of screens in which MyLife purports to be gathering additional "public reputation & background info on James Uharriet," including:

- "embarrassing online photos that James doesn't want you to see" (name bolded in original);

- "sensitive details gathered from Civil & Criminal Court records, & sexual offender list";

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

- "Sex Offender Status";

- Information allowing the viewer to "Determine James Uharriet's trustworthiness";

- "a full history of known addresses for James Uharriet" including "satellite pictures of locations, & an interactive map" (name bolded in original);

- "James Uharriet's civil judgments, including the type and amount owed" (name bolded in original);

- "James's contact info" (name bolded in original);

- Street address, email address, and phone number;

- "Work history" and "Education history";

- Records of "Felonies and Misdemeanors";

- "Sensitive information & graphic content," including "information that should not be shared with minors";

- "James's basic information" including "properties & vehicles" he owns (name bolded in original);

- "Relatives & Associates"; and

- "Financial data."

**ANSWER:**

In response to Paragraph 40 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶41:**

A selection of these screens is shown below:

**ANSWER:**

In response to Paragraph 41 of the FAC, Defendant admits that the images included therein are partial representations of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT ¶42:**

After the user clicks "Continue" on the last of the screens shown above, MyLife displays a payment page soliciting a subscription to mylife.com for $10.95 per month. The page clearly links Mr. Uharriet's name, personal information, and persona to the purchase of a subscription. The page states "We Found Negative Items On James's Public Reputation Profile" on a bright red banner. In a message displayed directly beneath Mr. Uharriet's name, location, and age, the MyLife urges the user to pay in order to "Get Instant Information On James Now!" MyLife promises that a subscription will provide access to information not just about Mr. Uharriet, but also about other individuals. Subscribers will have the ability to "Search Unlimited for Friends, Neighbors and Dates" and "Check Everyone Else So You're Safe."

**ANSWER:**

In response to Paragraph 42 of the FAC, Defendant admits that the image included therein is a partial representation of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶43:**

In its <u>second</u> advertising technique, MyLife uses Mr. Uharriet's name, personal information, and persona to advertise a "Premium Membership" subscription. This advertising technique targets users like Mr. Uharriet whose names, personal information, and personas appear in teaser profiles on MyLife's website. MyLife warns Mr. Uharriet that (1) MyLife may possess additional "sensitive" information about him; (2) this information may have affected his "Reputation Profile & Public Reputation Score"; and (3) other MyLife users "Might Have Viewed Your Reputation Profile." In exchange for a payment of $7.95 per month, Mr. Uharriet would receive the ability to correct, edit, or prevent others from viewing his personal information on mylife.com. He would also receive various tools to improve his "Reputation Score" on mylife.com.

**ANSWER:**

In response to Paragraph 43 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.    Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶44:**

This is unconscionable. MyLife warns Mr. Uharriet that "sensitive" information in his MyLife "Reputation Profile" may be adversely affecting his reputation profile, which others may have seen. But it is MyLife itself that created Mr. Uharriet's "Reputation Profile." It is MyLife that distributed his full profile to its paying subscribers. And it is MyLife that published his teaser profile publicly in advertisements for MyLife subscriptions.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

**ANSWER:**

Defendant denies the allegations in the first sentence of Paragraph 44 of the FAC.  Defendant admits that it creates a report based on publicly available information provided by third parties, makes reports available to paying subscribers, and displays a reputation profile based on information from publicly available sources.  In response to the remaining allegations in this Paragraph, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶45:**

Users who click on the button marked "This is me — View My Report" in Mr. Uharriet's teaser profile (see above) are shown a series of screens in which MyLife purports to be "Aggregat[ing] Reputation & Background Details For You." Like the screens used in the first advertising technique, these screens emphasize the "sensitive" nature of the information MyLife has about Mr. Uharriet. Unlike the screens in the first technique, these screens emphasize the services MyLife provides to "Help[] You Correct & Improve Your Reputation." Among other statements, the screens warn Mr. Uharriet that:

    a.    "Reputation is Everything."

    b.    "your reputation is being looked at CONSTANTLY. It's critical that you manage what's public about you."

    c.    "MyLife Reputation Profiles show up in over 300 million online searches every month."

    d.    "People may have been looking for you."

**ANSWER:**

In response to Paragraph 45 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶46:**

A selection of these screens is shown below:

**ANSWER:**

In response to Paragraph 46 of the FAC, Defendant admits that the images included therein are partial representations of Defendant's website at one point in time.  Defendant further states that it denies

79406372v.4

that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶47:**

After the user clicks "Continue" on the last of the screens shown above, MyLife displays a payment page soliciting a subscription for $7.95 per month. The page clearly links Mr. Uharriet's name, personal information, and persona to the purchase of a subscription. The page states "James, We Found Negative Items On Your Reputation Profile" on a bright red banner. In a larger message just below the red banner, the page says "James, To See Your Full Reputation Details With Score & More, Upgrade Now." MyLife promises that a subscription will provide not just access to his full profile, but also the ability to "Correct" and "Edit" the profile, including "locking sections until you approve," as well as the ability to "Hide Anonymous Personal Reviews."

**ANSWER:**

In response to Paragraph 47 of the FAC, Defendant admits that the image included therein is a partial representation of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶48:**

MyLife's sole purpose in using Mr. Uharriet's name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to mylife.com.

**ANSWER:**

In response to Paragraph 48 of the FAC, Defendant denies, generally and specifically, each and every allegation contained therein.

**COMPLAINT ¶49:**

Mr. Uharriet does not know how MyLife obtained his name, city of residence, age, and names of his relatives. Nor does he know how MyLife obtained any of the additional "sensitive" or "embarrassing" information it purports to possess in its full profile of Mr. Uharriet.

**ANSWER:**

In response to Paragraph 49 of the FAC, Defendant is without knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT ¶50:**

Contrary to the many insinuations MyLife published in its advertisements about Mr. Uharriet, Mr. Uharriet is not listed on any sex offender list or registry.

**ANSWER:**

In response to Paragraph 50 of the FAC, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

**COMPLAINT ¶51:**

MyLife misappropriated Mr. Uharriet's personal information and persona without permission from Mr. Uharriet or the various sources from which it presumably stole his information.

**ANSWER:**

In response to Paragraph 51 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶52:**

Mr. Uharriet has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

**ANSWER:**

In response to Paragraph 52 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶53:**

MyLife has injured Mr. Uharriet by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

**ANSWER:**

In response to Paragraph 53 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

**COMPLAINT ¶54:**

2

MyLife's illegal actions caused Mr. Uharriet mental injury and disturbed his peace of mind. Mr.
Uharriet is deeply uncomfortable in the knowledge that MyLife is using his name and persona in
advertisements suggesting he has a criminal record and a history as a sex offender. Mr. Uharriet believes
his persona is rightly his to control. MyLife's illegal use has left him worried and uncertain about his
inability to control how his name and persona is used. Mr. Uharriet feels that MyLife's use of his name
and persona is an alarming invasion of his privacy. Mr. Uharriet believes that MyLife's collection and
publication of intimate personal details about him and his family members encourages and enables identity
fraud. He believes MyLife's use of his personal information encourages and enables stalking and other
predatory behaviors.

3

4

5

6

7

**ANSWER:**

8

In response to Paragraph 54 of the FAC, Defendant states that the allegations contained therein

9

consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary,

10

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Mr.

11

Uharriet's alleged "mental injury" and other emotional distress related allegations and, on that basis,

12

denies, generally and specifically, each and every such allegation. Defendant denies any remaining

13

allegations in this Paragraph.

14

**B.   Aviva Kellman**

15

**COMPLAINT ¶55:**

16

Plaintiff Aviva Kellman has no relationship with MyLife. She is not a subscriber and has never
used mylife.com.

17

**ANSWER:**

18

In response to Paragraph 55 of the FAC, and based on the information Defendant knows at this

19

time, Defendant admits the allegations in this Paragraph.

20

**COMPLAINT ¶56:**

21

Ms. Kellman has never agreed to MyLife's Terms of Service, nor has she agreed to any arbitration
agreement with MyLife. Ms. Kellman has never authorized anyone to create a MyLife account on her
behalf. Ms. Kellman has never authorized anyone to agree to arbitration with MyLife on her behalf.

22

23

**ANSWER:**

24

In response to Paragraph 56, Defendant states the allegations contained therein are legal

25

conclusions to which no response is required. To the extent a response is required, and based on the

26

information Defendant knows at this time, Defendant admits the allegations in this Paragraph. Defendant

27

reserves the right to amend its answer to this Paragraph.

28

21

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### COMPLAINT ¶57:

Ms. Kellman did not give consent to MyLife to use her name, likeness, personal information, or persona in any way. Had MyLife requested her consent, Ms. Kellman would not have provided it.

**ANSWER:**

In response to Paragraph 57, Defendant states that the allegations contained therein are legal conclusions to which no response is required.  To the extent a response is required, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

### COMPLAINT ¶58:

MyLife uses Ms. Kellman's name and persona in advertisements promoting its website subscriptions. MyLife publicly displays a teaser profile of personal information about Ms. Kellman. The teaser profile states her name, age, cities of residence, names of her relatives. The teaser profile uniquely identifies Ms. Kellman.

**ANSWER:**

In response to Paragraph 58 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶59:

The teaser profile depicting Ms. Kellman is publicly displayed on the MyLife website in a format substantially similar to the teaser profile for Mr. Uharriet, which appears in Paragraph 36 above.

**ANSWER:**

In response to Paragraph 59 of the FAC, Defendant admits that the image incorporated by reference is a partial representation of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

2

3

**COMPLAINT ¶60:**

On information and belief, MyLife.com publicly displays webpages with Ms. Kellman's name and personal information in a substantially similar manner to the screenshots shown in Paragraphs 36, 41, 42, 46, and 47 for Mr. Uharriet.

4

**ANSWER:**

5

6

7

8

9

10

In response to Paragraph 60 of the FAC, Defendant admits that the images incorporated by reference are partial representations of Defendant's website at one point in time.   Defendant further refers to its answers to Paragraphs 36, 41, 42 and 47.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

11

**COMPLAINT ¶61:**

12

13

MyLife provides a publicly accessible landing page at mylife.com on which users may search, and have searched, for Ms. Kellman by name, location, and contact information. See ¶ 37.

14

**ANSWER:**

15

16

17

18

19

In response to Paragraph 61 of the FAC, Defendant admits that the image incorporated by reference is a partial representation of Defendant's website at one point in time, and that a user can search for Ms. Kellman by name.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

20

**COMPLAINT ¶62:**

21

Users who searched for Ms. Kellman received the teaser profile uniquely identifying Ms. Kellman by name, age, cities of residence, and names of her relatives.

22

**ANSWER:**

23

24

25

In response to Paragraph 62 of the FAC, Defendant admits that users searching for Ms. Kellman by name were able to access certain limited information.  Defendant denies any remaining allegations in this Paragraph.

26

**COMPLAINT ¶63:**

27

28

MyLife uses Ms. Kellman's teaser profile in two advertising techniques. In its first advertising technique, MyLife uses Ms. Kellman's name, personal information, and persona to advertise a website

23

subscription providing access to additional information about Ms. Kellman and hundreds of millions of other individuals.

**ANSWER:**

In response to Paragraph 63 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.   Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶64:**

Users who click on either "Aviva S Kellman, 41" or the button marked "View Reputation Profile" are shown a series of screens in which MyLife purports to be gathering additional "public reputation & background info on Aviva Kellman," including:

- "embarrassing online photos that Aviva doesn't want you to see" (name bolded in original);

- "sensitive details gathered from Civil & Criminal Court records, & sexual offender list";

- "Sex Offender Status";

- Information allowing the viewer to "Determine James Uharriet's trustworthiness";

- "a full history of known addresses for Aviva Kellman" including "satellite pictures of locations, & an interactive map" (name bolded in original);

- "Aviva Kellman's civil judgments, including the type and amount owed" (name bolded in original);

- "Aviva's contact info" (name bolded in original);

- Street address, email address, and phone number;

- "Work history" and "Education history";

- Records of "Felonies and Misdemeanors";

- "Sensitive information & graphic content," including "information that should not be shared with minors";

- "Aviva's basic information" including "properties & vehicles" he owns (name bolded in original);

- "Relatives & Associates"; and

- "Financial data."

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

**ANSWER:**

2

In response to Paragraph 64 of the FAC, Defendant denies that the allegations in this Paragraph

3

completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and

4

denies any allegations inconsistent therewith.   Defendant denies any remaining allegations in this

5

Paragraph.

6

**COMPLAINT ¶65:**

7

The screens shown in Paragraph 41 are the same screens MyLife shows for Ms. Kellman, but with
Ms. Kellman's name in place of Mr. Uharriet's.

8

**ANSWER:**

9

In response to Paragraph 65 of the FAC, Defendant admits that the images incorporated by

10

reference are partial representations of Defendant's website at one point in time.  Defendant further states

11

that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website,

12

refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant

13

denies any remaining allegations in this Paragraph.

14

**COMPLAINT ¶66:**

15

After the user clicks "Continue" on the last of the screens shown in Paragraph 41, MyLife displays

16

a payment page soliciting a subscription to mylife.com for $10.95 per month. The page clearly links Ms.
Kellman's name, personal information, and persona to the purchase of a subscription. The page states "We
Found Negative Items On Aviva's Public Reputation Profile" on a bright red banner. In a message

17

displayed directly beneath Ms. Kellman's name, location, and age, the MyLife urges the user to pay in

18

order to "Get Instant Information On Aviva Now!" MyLife promises that a subscription will provide
access to information not just about Ms. Kellman, but also about other individuals. Subscribers will have

19

the ability to "Search Unlimited for Friends, Neighbors and Dates" and "Check Everyone Else So You're

20

Safe."

21

**ANSWER:**

22

In response to Paragraph 66 of the FAC, Defendant denies that the allegations in this Paragraph

23

completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and

24

denies any allegations inconsistent therewith.   Defendant denies any remaining allegations in this

25

Paragraph.

26

**COMPLAINT ¶67:**

27

In its <u>second</u> advertising technique, MyLife uses Ms. Kellman's name, personal information, and
persona to advertise a "Premium Membership" subscription. This advertising technique targets users like

28

Ms. Kellman whose names, personal information, and personas appear in teaser profiles on MyLife's

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

website. MyLife warns Ms. Kellman that (1) MyLife may possess additional "sensitive" information about her; (2) this information may have affected her "Reputation Profile & Public Reputation Score"; and (3) other MyLife users "Might Have Viewed Your Reputation Profile." In exchange for a payment of $7.95 per month, Ms. Kellman would receive the ability to correct, edit, or prevent others from viewing her personal information on mylife.com. She would also receive various tools to improve her "Reputation Score" on mylife.com.

**ANSWER:**

In response to Paragraph 67 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶68:

This is unconscionable. MyLife warns Ms. Kellman that "sensitive" information in her MyLife "Reputation Profile" may be adversely affecting her reputation profile, which others may have seen. But it is MyLife itself that created Ms. Kellman's "Reputation Profile." It is MyLife that distributed her full profile to its paying subscribers. And it is MyLife that published her teaser profile publicly in advertisements for MyLife subscriptions.

**ANSWER:**

Defendant denies the allegations in the first sentence of Paragraph 68 of the FAC. Defendant admits that it creates a report based on publicly available information provided by third parties, makes reports available to paying subscribers, and displays a reputation profile based on information from publicly available sources.  In response to the remaining allegations in this Paragraph, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶69:

Users who click on the button marked "This is me — View My Report" in Ms. Kellman's teaser profile (see above) are shown a series of screens in which MyLife purports to be "Aggregat[ing] Reputation & Background Details For You." Like the screens used in the first advertising technique, these screens emphasize the "sensitive" nature of the information MyLife has about Ms. Kellman. Unlike the screens in the first technique, these screens emphasize the services MyLife provides to "Help[] You Correct & Improve Your Reputation." Among other statements, the screens warn Ms. Kellman that:

a.      "Reputation is Everything."

b.      "your reputation is being looked at CONSTANTLY. It's critical that you manage what's public about you."

---

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

c.      "MyLife Reputation Profiles show up in over 300 million online searches every month."

d.      "People may have been looking for you."

**ANSWER:**

In response to Paragraph 69 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶70:**

The screens shown in Paragraph 46 are the same screens MyLife shows for Ms. Kellman, but with Ms. Kellman's name in place of Mr. Uharriet's.

**ANSWER:**

In response to Paragraph 70 of the FAC, Defendant admits that the images incorporated by reference are partial representations of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶71:**

After the user clicks "Continue" on the last of the screens shown above, MyLife displays a payment page soliciting a subscription for $7.95 per month. The page clearly links Ms. Kellman's name, personal information, and persona to the purchase of a subscription. The page states "Aviva, We Found Negative Items On Your Reputation Profile" on a bright red banner. In a larger message just below the red banner, the page says "Aviva, To See Your Full Reputation Details With Score & More, Upgrade Now." MyLife promises that a subscription will provide not just access to her full profile, but also the ability to "Correct" and "Edit" the profile, including "locking sections until you approve," as well as the ability to "Hide Anonymous Personal Reviews."

**ANSWER:**

In response to Paragraph 71 of the FAC, Defendant admits that the images referenced therein are a partial representation of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT ¶72:**

MyLife's sole purpose in using Ms. Kellman's name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to mylife.com.

**ANSWER:**

In response to Paragraph 72 of the FAC, Defendant denies, generally and specifically, each and every allegation contained therein.

**COMPLAINT ¶73:**

Ms. Kellman does not know how MyLife obtained her name, city of residence, age, and names of her relatives. Nor does she know how MyLife obtained any of the additional "sensitive" or "embarrassing" information it purports to possess in its full profile of Ms. Kellman.

**ANSWER:**

In response to Paragraph 73, Defendant lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

**COMPLAINT ¶74:**

Contrary to the many insinuations MyLife published in its advertisements about Ms. Kellman, Ms. Kellman is not listed on any sex offender list or registry.

**ANSWER:**

In response to Paragraph 74, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

**COMPLAINT ¶75:**

MyLife misappropriated Ms. Kellman's personal information and persona without permission from Ms. Kellman or the various sources from which it presumably stole her information.

**ANSWER:**

In response to Paragraph 75 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

2

3

**COMPLAINT ¶76:**

Ms. Kellman has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

4

**ANSWER:**

5

In response to Paragraph 76 of the FAC, Defendant states that the allegations contained therein

6

consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary,

7

Defendant denies the allegations in this Paragraph.

8

**COMPLAINT ¶77:**

9

10

MyLife has injured Ms. Kellman by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

11

**ANSWER:**

12

In response to Paragraph 77 of the FAC, Defendant states that the allegations contained therein

13

consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary,

14

Defendant denies the allegations in this Paragraph.

15

**COMPLAINT ¶78:**

16

17

18

19

20

MyLife's illegal actions caused Ms. Kellman mental injury and disturbed her peace of mind. Ms. Kellman is deeply uncomfortable in the knowledge that MyLife is using her name and persona in advertisements suggesting she has a criminal record and a history as a sex offender. Ms. Kellman believes her persona is rightly hers to control. MyLife's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Kellman feels that MyLife's use of her name and persona is an alarming invasion of her privacy. Ms. Kellman believes that MyLife's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud. She believes MyLife's use of her personal information encourages and enables stalking and other predatory behaviors.

21

**ANSWER:**

22

In response to Paragraph 78 of the FAC, Defendant states that the allegations contained therein

23

consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary,

24

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Ms.

25

Kellman's alleged "mental injury" and other emotional distress related allegations and, on that basis,

26

denies, generally and specifically, each and every such allegation. Defendant denies any remaining

27

allegations in this Paragraph.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.**     **Alison Bockius**

**COMPLAINT ¶79:**

Plaintiff Alison Bockius has no relationship with MyLife. She is not a subscriber and has never used mylife.com.

**ANSWER:**

In response to Paragraph 79 of the FAC, and based on the information Defendant knows at this time, Defendant admits the allegations in this Paragraph.

**COMPLAINT ¶80:**

Ms. Bockius has never agreed to MyLife's Terms of Service, nor has she agreed to any arbitration agreement with MyLife. Ms. Bockius has never authorized anyone to create a MyLife account on her behalf. Ms. Bockius has never authorized anyone to agree to arbitration with MyLife on her behalf.

**ANSWER:**

In response to Paragraph 80, Defendant states the allegations contained therein are legal conclusions to which no response is required.  To the extent a response is required, and based on the information Defendant knows at this time, Defendant admits the allegations in this Paragraph.  Defendant reserves the right to amend its answer to this Paragraph.

**COMPLAINT ¶81:**

Ms. Bockius did not give consent to MyLife to use her name, likeness, personal information, or persona in any way. Had MyLife requested her consent, Ms. Bockius would not have provided it.

**ANSWER:**

In response to Paragraph 81, Defendant states that the allegations contained therein are legal conclusions to which no response is required.  To the extent a response is required, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

**COMPLAINT ¶82:**

MyLife uses Ms. Bockius' name and persona in advertisements promoting its website subscriptions. MyLife publicly displays a teaser profile of personal information about Ms. Bockius. The teaser profile states her name, age, cities of residence, names of her relatives. The teaser profile uniquely identifies Ms. Bockius.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

2

**ANSWER:**

In response to Paragraph 82, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶83:**

The teaser profile depicting Ms. Bockius is publicly displayed on the MyLife website in a format substantially similar to the teaser profile for Mr. Uharriet, which appears in Paragraph 36 above.

**ANSWER:**

In response to Paragraph 83, Defendant admits that the image incorporated by reference is a partial representation of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶84:**

On information and belief, MyLife.com publicly displays webpages with Ms. Bockius' name and personal information in a substantially similar manner to the screenshots shown in Paragraphs 36, 41, 42, 46, and 47 for Mr. Uharriet.

**ANSWER:**

In response to Paragraph 84 of the FAC, Defendant admits that the images incorporated by reference are partial representations of Defendant's website at one point in time.  Defendant further refers to its answers to Paragraphs 36, 41, 42, and 47.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶85:**

MyLife provides a publicly accessible landing page at mylife.com on which users may search, and have searched, for Ms. Bockius by name, location, and contact information. See ¶ 37.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

2  **ANSWER:**

3        In response to Paragraph 85 of the FAC, Defendant admits that the image incorporated by reference

4  is a partial representation of Defendant's website at one point in time, and that a user can search for Ms.

5  Bockius by name.  Defendant further states that it denies that the allegations in this Paragraph completely

6  and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any

   allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

7        **COMPLAINT ¶86:**

8        Users who searched for Ms. Bockius received the teaser profile uniquely identifying Ms. Bockius

9  by name, age, cities of residence, and names of her relatives.

10  **ANSWER:**

11        In response to Paragraph 86 of the FAC, Defendant admits that users searching for Ms. Bockius

12  by name were able to access certain limited information.  Defendant denies any remaining allegations in

13  this Paragraph.

14        **COMPLAINT ¶87:**

15        MyLife uses Ms. Bockius' teaser profile in two advertising techniques. In its <u>first</u> advertising
   technique, MyLife uses Ms. Bockius' name, personal information, and persona to advertise a website
16  subscription providing access to additional information about Ms. Bockius and hundreds of millions of
   other individuals.

17  **ANSWER:**

18        In response to Paragraph 87 of the FAC, Defendant denies that the allegations in this Paragraph

19  completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and

20  denies any allegations inconsistent therewith.   Defendant denies any remaining allegations in this

21  Paragraph.

22        **COMPLAINT ¶88:**

23        Users who click on either "Alison Bockius, 38" or the button marked "View Reputation Profile"
   are shown a series of screens in which MyLife purports to be gathering additional "public reputation &
24  background info on Alison Bockius," including:

25        • "embarrassing online photos that Alison doesn't want you to see" (name bolded in
            original);

26
        • "sensitive details gathered from Civil & Criminal Court records, & sexual offender list";
27
        • "Sex Offender Status";
28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

- Information allowing the viewer to "Determine James Uharriet's trustworthiness";

- "a full history of known addresses for Alison Bockius" including "satellite pictures of locations, & an interactive map" (name bolded in original);

- "Alison Bockius' civil judgments, including the type and amount owed" (name bolded in original);

- "Alison's contact info" (name bolded in original);

- Street address, email address, and phone number;

- "Work history" and "Education history";

- Records of "Felonies and Misdemeanors";

- "Sensitive information & graphic content," including "information that should not be shared with minors";

- "Alison's basic information" including "properties & vehicles" he owns (name bolded in original);

- "Relatives & Associates"; and

- "Financial data."

**ANSWER:**

In response to Paragraph 88 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶89:**

The screens shown in Paragraph 41 are the same screens MyLife shows for Ms. Bockius, but with Ms. Bockius' name in place of Mr. Uharriet's.

**ANSWER:**

In response to Paragraph 89 of the FAC, Defendant admits that the images incorporated by reference are partial representations of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

33

1

2

### COMPLAINT ¶90:

3

After the user clicks "Continue" on the last of the screens shown in Paragraph 41, MyLife displays a payment page soliciting a subscription to mylife.com for $10.95 per month. The page clearly links Ms. Bockius' name, personal information, and persona to the purchase of a subscription. The page states "We Found Negative Items On Alison's Public Reputation Profile" on a bright red banner. In a message displayed directly beneath Ms. Bockius' name, location, and age, the MyLife urges the user to pay in order to "Get Instant Information On Alison Now!" MyLife promises that a subscription will provide access to information not just about Ms. Bockius, but also about other individuals. Subscribers will have the ability to "Search Unlimited for Friends, Neighbors and Dates" and "Check Everyone Else So You're Safe."

### ANSWER:

In response to Paragraph 90 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.   Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶91:

In its <u>second</u> advertising technique, MyLife uses Ms. Bockius' name, personal information, and persona to advertise a "Premium Membership" subscription. This advertising technique targets users like Ms. Bockius whose names, personal information, and personas appear in teaser profiles on MyLife's website. MyLife warns Ms. Bockius that (1) MyLife may possess additional "sensitive" information about her; (2) this information may have affected her "Reputation Profile & Public Reputation Score"; and (3) other MyLife users "Might Have Viewed Your Reputation Profile." In exchange for a payment of $7.95 per month, Ms. Bockius would receive the ability to correct, edit, or prevent others from viewing her personal information on mylife.com. She would also receive various tools to improve her "Reputation Score" on mylife.com.

### ANSWER:

In response to Paragraph 91, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶92:

This is unconscionable. MyLife warns Ms. Bockius that "sensitive" information in her MyLife "Reputation Profile" may be adversely affecting her reputation profile, which others may have seen. But it is MyLife itself that created Ms. Bockius' "Reputation Profile." It is MyLife that distributed her full profile to its paying subscribers. And it is MyLife that published her teaser profile publicly in advertisements for MyLife subscriptions.

### ANSWER:

Defendant denies the allegations in the first sentence of Paragraph 92 of the FAC. Defendant admits that it creates a report based on publicly available information provided by third parties, makes

34

reports available to paying subscribers, and displays a reputation profile based on information from publicly available sources.  In response to the remaining allegations in this Paragraph, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶93:**

Users who click on the button marked "This is me — View My Report" in Ms. Bockius' teaser profile (*see above*) are shown a series of screens in which MyLife purports to be "Aggregat[ing] Reputation & Background Details For You." Like the screens used in the first advertising technique, these screens emphasize the "sensitive" nature of the information MyLife has about Ms. Bockius. Unlike the screens in the first technique, these screens emphasize the services MyLife provides to "Help[] You Correct & Improve Your Reputation." Among other statements, the screens warn Ms. Bockius that:

a. "Reputation is Everything."

b. "your reputation is being looked at CONSTANTLY. It's critical that you manage what's public about you."

c. "MyLife Reputation Profiles show up in over 300 million online searches every month."

d. "People may have been looking for you."

**ANSWER:**

In response to Paragraph 93, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶94:**

The screens shown in Paragraph 46 are the same screens MyLife shows for Ms. Bockius, but with Ms. Bockius' name in place of Mr. Uharriet's.

**ANSWER:**

In response to Paragraph 94 of the FAC, Defendant admits that the images incorporated by reference are partial representations of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

35

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT ¶95:**

After the user clicks "Continue" on the last of the screens shown above, MyLife displays a payment page soliciting a subscription for $7.95 per month. The page clearly links Ms. Bockius' name, personal information, and persona to the purchase of a subscription. The page states "Alison, We Found Negative Items On Your Reputation Profile" on a bright red banner. In a larger message just below the red banner, the page says "Alison, To See Your Full Reputation Details With Score & More, Upgrade Now." MyLife promises that a subscription will provide not just access to her full profile, but also the ability to "Correct" and "Edit" the profile, including "locking sections until you approve," as well as the ability to "Hide Anonymous Personal Reviews."

**ANSWER:**

In response to Paragraph 95, Defendant admits that the images referenced therein are a partial representation of Defendant's website at one point in time. Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶96:**

MyLife's sole purpose in using Ms. Bockius' name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to mylife.com.

**ANSWER:**

In response to Paragraph 96 of the FAC, Defendant denies, generally and specifically, each and every allegation contained therein.

**COMPLAINT ¶97:**

Ms. Bockius does not know how MyLife obtained her name, city of residence, age, and names of her relatives. Nor does she know how MyLife obtained any of the additional "sensitive" or "embarrassing" information it purports to possess in its full profile of Ms. Bockius.

**ANSWER:**

In response to Paragraph 97 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

**COMPLAINT ¶98:**

Contrary to the many insinuations MyLife published in its advertisements about Ms. Bockius, Ms. Bockius is not listed on any sex offender list or registry.

36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER:**

In response to Paragraph 98 of the FAC, Defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

**COMPLAINT ¶99:**

MyLife misappropriated Ms. Bockius' personal information and persona without permission from Ms. Bockius or the various sources from which it presumably stole her information.

**ANSWER:**

In response to Paragraph 99 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶100:**

Ms. Bockius has intellectual property and privacy interests in her name, likeness, and persona recognized by Nevada statutory law, and by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

**ANSWER:**

In response to Paragraph 100 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶101:**

MyLife has injured Ms. Bockius by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

**ANSWER:**

In response to Paragraph 101 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶102:**

MyLife's illegal actions caused Ms. Bockius mental injury and disturbed her peace of mind. Ms. Bockius is deeply uncomfortable in the knowledge that MyLife is using her name and persona in advertisements suggesting she has a criminal record and a history as a sex offender. Ms. Bockius believes

37

79406372v.4

her persona is rightly her to control. MyLife's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Bockius feels that MyLife's use of her name and persona is an alarming invasion of her privacy. Ms. Bockius believes that MyLife's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud. She believes MyLife's use of her personal information encourages and enables stalking and other predatory behaviors.

**ANSWER:**

In response to Paragraph 102 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.   To the extent an answer is deemed necessary, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Ms. Bockius' alleged "mental injury" and other emotional distress related allegations and, on that basis, denies, generally and specifically, each and every such allegation.  Defendant denies any remaining allegations in this Paragraph.

**D.   Karen Evans**

**COMPLAINT ¶103:**

Plaintiff Karen Evans has no relationship with MyLife. She is not a subscriber and has never used mylife.com.

**ANSWER:**

In response to Paragraph 103 of the FAC, and based on the information Defendant knows at this time, Defendant admits the allegations in this Paragraph.

**COMPLAINT ¶104:**

Ms. Evans has never agreed to MyLife's Terms of Service, nor has she agreed to any arbitration agreement with MyLife. Ms. Evans has never authorized anyone to create a MyLife account on her behalf. Ms. Evans has never authorized anyone to agree to arbitration with MyLife on her behalf.

**ANSWER:**

In response to Paragraph 104, Defendant states the allegations contained therein are legal conclusions to which no response is required.  To the extent a response is required, and based on the information Defendant knows at this time, Defendant admits the allegations in this Paragraph.  Defendant reserves the right to amend its answer to this Paragraph.

**COMPLAINT ¶105:**

Ms. Evans did not give consent to MyLife to use her name, likeness, personal information, or persona in any way. Had MyLife requested her consent, Ms. Evans would not have provided it.

79406372v.4

1

**ANSWER:**

2

In response to Paragraph 105, Defendant states that the allegations contained therein are legal

3

conclusions to which no response is required.  To the extent a response is required, Defendant states that

4

it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

5

allegations contained therein and, on that basis, denies, generally and specifically, each and every

6

allegation contained in this Paragraph.

7

**COMPLAINT ¶106:**

8

MyLife uses Ms. Evans' name and persona in advertisements promoting its website subscriptions.

9

MyLife publicly displays a teaser profile of personal information about Ms. Evans. The teaser profile states her name, age, cities of residence, names of her relatives. The teaser profile uniquely identifies Ms. Evans.

10

**ANSWER:**

11

12

In response to Paragraph 106 of the FAC, Defendant denies that the allegations in this Paragraph

13

completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and

14

denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this

Paragraph.

15

**COMPLAINT ¶107:**

16

17

The teaser profile depicting Ms. Evans is publicly displayed on the MyLife website in a format substantially similar to the teaser profile for Mr. Uharriet, which appears in Paragraph 36 above.

18

**ANSWER:**

19

In response to Paragraph 107 of the FAC, Defendant admits that the image incorporated by

20

reference is a partial representation of Defendant's website at one point in time.  Defendant further states

21

that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website,

22

refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant

23

denies any remaining allegations in this Paragraph.

24

**COMPLAINT ¶108:**

25

On information and belief, MyLife.com publicly displays webpages with Ms. Evans' name and

26

personal information in a substantially similar manner to the screenshots shown in Paragraphs 36, 41, 42, 46, and 47 for Mr. Uharriet.

27

28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

1

**ANSWER:**

2

In response to Paragraph 108 of the FAC, Defendant admits that the images incorporated by

3

reference are partial representations of Defendant's website at one point in time. Defendant further refers

4

to its answers to Paragraphs 36, 41, 42, 46, and 47.  Defendant further states that it denies that the

5

allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to

6

its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any

7

remaining allegations in this Paragraph.

8

**COMPLAINT ¶109:**

9

MyLife provides a publicly accessible landing page at mylife.com on which users may search, and

10

have searched, for Ms. Evans by name, location, and contact information.  *See* ¶ 37.

**ANSWER:**

11

12

In response to Paragraph 109 of the FAC, Defendant admits that the image incorporated by

13

reference is a partial representation of Defendant's website at one point in time, and that a user can search

14

for Ms. Evans by name.  Defendant denies that the allegations in this Paragraph completely and accurately

15

describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations

16

inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

17

**COMPLAINT ¶110:**

18

Users who searched for Ms. Evans received the teaser profile uniquely identifying Ms. Evans by
name, age, cities of residence, and names of her relatives.

19

**ANSWER:**

20

In response to Paragraph 110, Defendant admits that users searching for Ms. Evans by name were

21

able to access certain limited information.  Defendant denies any remaining allegations in this Paragraph.

22

**COMPLAINT ¶111:**

23

MyLife uses Ms. Evans' teaser profile in two advertising techniques. In its first advertising

24

technique, MyLife uses Ms. Evans' name, personal information, and persona to advertise a website
subscription providing access to additional information about Ms. Evans and hundreds of millions of

25

other individuals.

26

27

28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

1

**ANSWER:**

2

In response to Paragraph 111, Defendant denies that the allegations in this Paragraph completely

3

and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any

4

allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

5

**COMPLAINT ¶112:**

6

Users who click on either "Karen Evans, 38" or the button marked "View Reputation Profile" are

7

shown a series of screens in which MyLife purports to be gathering additional "public reputation & background info on Karen Evans," including:

8

- "embarrassing online photos that Karen doesn't want you to see" (name bolded in original);

9

- "sensitive details gathered from Civil & Criminal Court records, & sexual offender list";

10

- "Sex Offender Status";

11

- Information allowing the viewer to "Determine James Uharriet's trustworthiness";

12

- "a full history of known addresses for Karen Evans" including "satellite pictures of locations, & an interactive map" (name bolded in original);

13

14

- "Karen Evans' civil judgments, including the type and amount owed" (name bolded in original);

15

- "Karen's contact info" (name bolded in original);

16

- Street address, email address, and phone number;

17

- "Work history" and "Education history";

18

- Records of "Felonies and Misdemeanors";

19

- "Sensitive information & graphic content," including "information that should not be shared with minors";

20

21

- "Karen's basic information" including "properties & vehicles" he owns (name bolded in original);

22

- "Relatives & Associates"; and

23

- "Financial data."

24

**ANSWER:**

25

In response to Paragraph 112, Defendant denies that the allegations in this Paragraph completely

26

and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any

27

allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT ¶113:**

The screens shown in Paragraph 41 are the same screens MyLife shows for Ms. Evans, but with Ms. Evans' name in place of Mr. Uharriet's.

**ANSWER:**

In response to Paragraph 113 of the FAC, Defendant admits that the images incorporated by reference are partial representations of Defendant's website at one point in time. Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶114:**

After the user clicks "Continue" on the last of the screens shown in Paragraph 41, MyLife displays a payment page soliciting a subscription to mylife.com for $10.95 per month. The page clearly links Ms. Evans' name, personal information, and persona to the purchase of a subscription. The page states "We Found Negative Items On Karen's Public Reputation Profile" on a bright red banner. In a message displayed directly beneath Ms. Evans' name, location, and age, the MyLife urges the user to pay in order to "Get Instant Information On Karen Now!" MyLife promises that a subscription will provide access to information not just about Ms. Evans, but also about other individuals. Subscribers will have the ability to "Search Unlimited for Friends, Neighbors and Dates" and "Check Everyone Else So You're Safe."

**ANSWER:**

In response to Paragraph 114 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶115:**

In its second advertising technique, MyLife uses Ms. Evans' name, personal information, and persona to advertise a "Premium Membership" subscription. This advertising technique targets users like Ms. Evans whose names, personal information, and personas appear in teaser profiles on MyLife's website. MyLife warns Ms. Evans that (1) MyLife may possess additional "sensitive" information about her; (2) this information may have affected her "Reputation Profile & Public Reputation Score"; and (3) other MyLife users "Might Have Viewed Your Reputation Profile." In exchange for a payment of $7.95 per month, Ms. Evans would receive the ability to correct, edit, or prevent others from viewing her personal information on mylife.com. She would also receive various tools to improve her "Reputation Score" on mylife.com.

42

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

**ANSWER:**

2

In response to Paragraph 115 of the FAC, Defendant denies that the allegations in this Paragraph

3

completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and

4

denies any allegations inconsistent therewith.   Defendant denies any remaining allegations in this

5

Paragraph.

6

**COMPLAINT ¶116:**

7

This is unconscionable. MyLife warns Ms. Evans that "sensitive" information in her MyLife

8

"Reputation Profile" may be adversely affecting her reputation profile, which others may have seen. But it is MyLife itself that created Ms. Evans' "Reputation Profile." It is MyLife that distributed her full profile

9

to its paying subscribers. And it is MyLife that published her teaser profile publicly in advertisements for MyLife subscriptions.

10

**ANSWER:**

11

Defendant denies the allegations in the first sentence of Paragraph 116 of the FAC. Defendant

12

admits that it creates a report based on publicly available information provided by third parties, makes

13

reports available to paying subscribers, and displays a reputation profile based on information from

14

publicly available sources.   In response to the remaining allegations in this Paragraph, Defendant denies

15

that the allegations in this Paragraph completely and accurately describe Defendant's website, refers

16

Plaintiff to its website for its content, and denies any allegations inconsistent therewith.   Defendant denies

17

any remaining allegations in this Paragraph.

18

**COMPLAINT ¶117:**

19

Users who click on the button marked "This is me — View My Report" in Ms. Evans' teaser

20

profile (*see above*) are shown a series of screens in which MyLife purports to be "Aggregat[ing] Reputation & Background Details For You." Like the screens used in the first advertising technique, these

21

screens emphasize the "sensitive" nature of the information MyLife has about Ms. Evans. Unlike the screens in the first technique, these screens emphasize the services MyLife provides to "Help[] You Correct & Improve Your Reputation." Among other statements, the screens warn Ms. Evans that:

22

a.       "Reputation is Everything."

23

b.       "your reputation is being looked at CONSTANTLY. It's critical that you manage what's

24

public about you."

25

c.       "MyLife Reputation Profiles show up in over 300 million online searches every month."

26

d.       "People may have been looking for you."

27

28

43

79406372v.4

**ANSWER:**

In response to Paragraph 117 of the FAC, Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶118:**

The screens shown in Paragraph 46 are the same screens MyLife shows for Ms. Evans, but with Ms. Evans' name in place of Mr. Uharriet's.

**ANSWER:**

In response to Paragraph 118 of the FAC, Defendant admits that the images incorporated by reference are partial representations of Defendant's website at one point in time.  Defendant denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶119:**

After the user clicks "Continue" on the last of the screens shown above, MyLife displays a payment page soliciting a subscription for $7.95 per month. The page clearly links Ms. Evans' name, personal information, and persona to the purchase of a subscription. The page states "Karen, We Found Negative Items On Your Reputation Profile" on a bright red banner. In a larger message just below the red banner, the page says "Karen, To See Your Full Reputation Details With Score & More, Upgrade Now." MyLife promises that a subscription will provide not just access to her full profile, but also the ability to "Correct" and "Edit" the profile, including "locking sections until you approve," as well as the ability to "Hide Anonymous Personal Reviews."

**ANSWER:**

In response to Paragraph 119 of the FAC, admits that the images referenced therein are a partial representation of Defendant's website at one point in time.  Defendant further states that it denies that the allegations in this Paragraph completely and accurately describe Defendant's website, refers Plaintiff to its website for its content, and denies any allegations inconsistent therewith.  Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶120:**

MyLife's sole purpose in using Ms. Evans' name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to mylife.com.

79406372v.4

1

**ANSWER:**

2

 In response to Paragraph 120 of the FAC, Defendant denies, generally and specifically, each and

3

every allegation contained therein.

4

 **COMPLAINT ¶121:**

5

 Ms. Evans does not know how MyLife obtained her name, city of residence, age, and names of
her relatives. Nor does she know how MyLife obtained any of the additional "sensitive" or "embarrassing"

6

information it purports to possess in its full profile of Ms. Evans.

7

**ANSWER:**

8

 In response to Paragraph 121 of the FAC, Defendant states that it is without knowledge or

9

information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, on

10

that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

11

 **COMPLAINT ¶122:**

12

 Contrary to the many insinuations MyLife published in its advertisements about Ms. Evans, Ms.
Evans is not listed on any sex offender list or registry.

13

**ANSWER:**

14

 In response to Paragraph 122 of the FAC, Defendant states that it is without knowledge or

15

information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, on

16

that basis, denies, generally and specifically, each and every allegation contained in this Paragraph.

17

 **COMPLAINT ¶123:**

18

 MyLife misappropriated Ms. Evans' personal information and persona without permission from
Ms. Evans or the various sources from which it presumably stole her information.

19

20

**ANSWER:**

21

 In response to Paragraph 123 of the FAC, Defendant states that the allegations contained therein

22

consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

23

Defendant denies the allegations in this Paragraph.

24

 **COMPLAINT ¶124:**

25

 Ms. Evans has intellectual property and privacy interests in her name, likeness, and persona
recognized by California statutory and common law, and by Ohio statutory and common law. She has the

26

right to exclude anyone from making commercial use of her persona without her permission.

27

28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

79406372v.4

**ANSWER:**

In response to Paragraph 124 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶125:**

MyLife has injured Ms. Evans by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

**ANSWER:**

In response to Paragraph 125 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶126:**

MyLife's illegal actions caused Ms. Evans mental injury and disturbed her peace of mind. Ms. Evans is deeply uncomfortable in the knowledge that MyLife is using her name and persona in advertisements suggesting she has a criminal record and a history as a sex offender. Ms. Evans believes her persona is rightly her to control. MyLife's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Evans feels that MyLife's use of her name and persona is an alarming invasion of her privacy. Ms. Evans believes that MyLife's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud. She believes MyLife's use of her personal information encourages and enables stalking and other predatory behaviors.

**ANSWER:**

In response to Paragraph 126 of the FAC, Defendant states that the allegations contained therein consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Ms. Evans' alleged "mental injury" and other emotional distress related allegations and, on that basis, denies, generally and specifically, each and every such allegation.  Defendant denies any remaining allegations in this Paragraph.

**CLASS ACTION ALLEGATIONS**

**COMPLAINT ¶127:**

Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3). Plaintiffs seek to represent the following Classes:

46

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1
2

> <u>Nationwide Class</u>: All people in the United States who are not MyLife subscribers and whose names and personal information MyLife incorporated in teaser profiles used to promote its MyLife memberships.

3

> <u>Nevada Sub-Class</u>: All Nevada residents who are members of the nationwide class.

4

> <u>Ohio Sub-Class</u>: All Ohio residents who are members of the nationwide class.

5

**<u>ANSWER:</u>**

6

7

8

9

In response to Paragraph 127, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

10

**<u>COMPLAINT ¶128:</u>**

11

12

Excluded from the proposed Classes are Plaintiffs' counsel; MyLife, its officers and directors, counsel, successors, and assigns; any entity in which MyLife has a controlling interest; and the judge to whom this case is assigned and the judge's immediate family.

13

**<u>ANSWER:</u>**

14

15

16

17

18

In response to Paragraph 128, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant admits that Plaintiffs purport to exclude from their putative classes the categories of individuals identified in this Paragraph.  Defendant denies any remaining allegations in this Paragraph, and specifically denies that the claims in this action can be maintained on behalf of any class.

19

**<u>COMPLAINT ¶129:</u>**

20

21

22

23

The members of the proposed Classes are so numerous that joinder of individual claims is impracticable. MyLife advertises that it has "Reputation Profiles and Reputation Scores for more than 325 million individuals in the U.S." Accordingly, MyLife claims to have teaser profiles on every or nearly every person in the United States. The size of the Nationwide Class is therefore close to the population of the United States, and the sizes of the Nevada and Ohio Sub-Classes are close to the populations of those states.

24

**<u>ANSWER:</u>**

25

26

27

28

In response to Paragraph 129, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

**COMPLAINT ¶130:**

There are significant questions of fact and law common to the members of the Nationwide Class. These include:

a.      Whether MyLife's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the knowing use without consent of another's name, photograph, or likeness on or in products or for purposes of advertising products within the meaning of Cal. Civ. Code § 3344;

b.      Whether MyLife solicited and obtained written consent from Nationwide Class Members prior to using their personas in advertisements promoting its website, as required by Cal. Civ. Code § 3344;

c.      Whether MyLife's use of Nationwide Class Members' names and personal information in advertisements and as part of their subscription products falls within the exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign" within the meaning of Cal. Civ. Code § 3344;

d.      The amount of MyLife's "profits from the unauthorized use" of Nationwide Class Members' names and personal information;

e.      Whether MyLife's conduct described in this Complaint violates California common law prohibiting misappropriation of a name or likeness;

f.      Whether Plaintiffs and Nationwide Class Members are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

**ANSWER:**

In response to Paragraph 130, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

**COMPLAINT ¶131:**

There are significant questions of fact and law common to the members of the Nevada Sub-Class. These include:

a.      Whether MyLife's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the use of individuals' personalities for commercial purposes without previous written consent within the meaning of Nev. Rev. Stat. § 597.810;

b.      Whether Plaintiff Bockius and Nevada Sub-Class Members gave written consent to the use of their names, photographs, images, likenesses, and personalities to promote MyLife's products as required by Nev. Rev. Stat. § 597.810;

48

79406372v.4

c.      Whether MyLife's use of Plaintiff Bockius' and Nevada Sub-Class Members' names, photographs, images, likenesses, and personalities is in connection with a news, public affairs, or sports broadcast or publication, see Nev. Rev. Stat. § 597.790;

d.      Whether MyLife's commercial use of the names, photographs, images, likenesses, and personalities of Plaintiff Bockius and Nevada Sub-Class Members was knowing, such that Plaintiff Bockius and Nevada Sub-Class Members are entitled to exemplary and punitive damages under Nev. Rev. Stat. § 597.810;

e.      Whether Plaintiff Bockius and Nevada Sub-Class Members are entitled to the injunctive, declaratory monetary, and other relief requested in this Complaint.

**ANSWER:**

In response to Paragraph 131, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

**COMPLAINT ¶132:**

There are significant questions of fact and law common to the members of the Ohio Sub-Class. These include:

a.      Whether MyLife's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the use of aspects of individuals' personas for a commercial purpose without previous written consent within the meaning of Ohio Rev. Code § 2741.02;

b.      Whether Plaintiff Evans and Ohio Sub-Class Members gave written consent to the use of their names, photographs, images, likenesses, distinctive appearances, and personas to promote MyLife's products as required by Ohio Rev. Code § 2741.02;

c.      Whether MyLife's commercial use of aspects of Plaintiff Evans' and Ohio Sub-Class Members' personas was "in connection with any news, public affairs, sports broadcast, or account." See Ohio Rev. Code § 2741.02(D)(1);

d.      Whether MyLife's commercial use of aspects of the of Plaintiff Evans' and Ohio Sub-Class Members' personas was willful; the extent to which MyLife is able to pay statutory damages; and the extent of the harm to Plaintiff Evans and Ohio Sub-Class Members, all of which are relevant to determining the amount of statutory damages under Ohio Rev. Code § 2741.07;

e.      Whether MyLife's conduct entitles Plaintiff Evans and Ohio Sub-Class Members to punitive or exemplary damages under Ohio Rev. Code § 2741.07 and Ohio Rev. Code § 2315.21;

f.      Whether MyLife's conduct as described in this Complaint violates Ohio common law prohibiting misappropriation of a name or likeness; and

g.      Whether Plaintiff Evans and Ohio Sub-Class Members are entitled to the injunctive, declaratory monetary, and other relief requested in this Complaint.

**ANSWER:**

In response to Paragraph 132, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

**COMPLAINT ¶133:**

Plaintiffs' claims are typical of those of the proposed Nationwide Class and state Sub-Classes. Plaintiffs and all members of the proposed Classes have been harmed by MyLife's misappropriation and misuse of their identifies, names, likenesses, personas, and other personal information in advertisements promoting www.mylife.com. MyLife presents its advertisements in the same way for each Class member. The Nevada and Ohio Sub-Classes are comprised of members whose intellectual property and privacy rights are protected by the same state statutes and torts protecting the corresponding named Plaintiffs.

**ANSWER:**

In response to Paragraph 133, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

**COMPLAINT ¶134:**

The proposed class representatives will fairly and adequately represent the proposed Classes. Plaintiffs' claims are co-extensive with those of the rest of the Classes. Plaintiffs are represented by qualified counsel experienced in class action litigation of this nature.

**ANSWER:**

In response to Paragraph 134, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

**COMPLAINT ¶135:**

A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Classes is impracticable. Many members of the Classes do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning MyLife's common actions towards an entire group. Class action

50

procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

**ANSWER:**

In response to Paragraph 135, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

### COMPLAINT ¶136:

The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.  MyLife has acted on grounds generally applicable to the proposed Classes, such that final injunctive and declaratory relief is appropriate with respect to the Classes as a whole.

**ANSWER:**

In response to Paragraph 136, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

### COMPLAINT ¶137:

The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class Members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

**ANSWER:**

In response to Paragraph 137, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph and denies that the claims in this action can be maintained on behalf of any class.

### FIRST CAUSE OF ACTION
### Violation of California Right of Publicity Statute, Cal. Civ. Code § 3344
### (Plaintiffs on behalf of the Nationwide Class)

### COMPLAINT ¶138:

Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

**ANSWER:**

2

In response to Paragraph 138, Defendant incorporates by reference the foregoing answers as if

3

set forth fully herein.

4

**COMPLAINT ¶139:**

5

California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice,

6

signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

7

**ANSWER:**

8

In response to Paragraph 139, Defendant states that the allegations in this Paragraph consist of

9

10

legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant

11

refers to the Cal. Civ. Code § 3344 for its contents and denies any allegations of wrongdoing.  Defendant

12

denies any remaining allegations in this Paragraph.

13

**COMPLAINT ¶140:**

14

By engaging in the foregoing acts and omissions, MyLife used Plaintiffs' and Nationwide Class Members' names, likenesses, photographs, and personas for commercial purposes without consent.

15

Plaintiffs and Nationwide Class Members' names and personas have commercial value as demonstrated by MyLife's use and similar use by MyLife's competitors.

16

**ANSWER:**

17

In response to Paragraph 140 of the FAC, Defendant states that the allegations contained therein

18

consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

19

Defendant denies the allegations in this Paragraph.

20

**COMPLAINT ¶141:**

21

MyLife is a California company. Most of the wrongful acts and omissions giving rise to this

22

complaint occurred in California. Accordingly, each use of a Nationwide Class Member's name, likeness, or persona in a MyLife advertisement violates Cal. Civ. Code § 3344, wherever the Class Member resides in the United States.

23

**ANSWER:**

24

In response to Paragraph 141 of the FAC, Defendant admits that it is a California company.

25

Defendant further states that the remaining allegations are legal conclusions to which no response is

26

required.  To the extent an answer is deemed necessary, Defendant refers to the Cal. Civ. Code § 3344 for

27

28

52

79406372v.4

1
2
its contents and denies any allegations of wrongdoing.  Defendant denies any remaining allegations in this

Paragraph.

3

**COMPLAINT ¶142:**

4

Each use of a Nationwide Class Members' name and personal information in a teaser profile or full profile is a separate and distinct violation of Cal. Civ. Code § 3344.

5

**ANSWER:**

6
7
8
9
10

In response to Paragraph 142, Defendant states that the allegations in this Paragraph consist of

legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant

refers to the Cal. Civ. Code § 3344 for its contents and denies any allegations of wrongdoing.  Defendant

denies any remaining allegations in this Paragraph.

**COMPLAINT ¶143:**

11
12
13

Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

**ANSWER:**

14
15
16
17
18

In response to Paragraph 143, Defendant states that the allegations in this Paragraph consist of

legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant

refers to the Cal. Civ. Code § 3344 for its contents and denies any allegations of wrongdoing.  Defendant

denies any remaining allegations in this Paragraph.

**COMPLAINT ¶144:**

19
20
21
22
23

As a result of MyLife's violation of Cal. Civ. Code § 3344, Plaintiffs and Nationwide Class Members have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiffs and Nationwide Class Members have been denied the economic value of their names, likenesses, and personas, which MyLife misappropriated without compensation to Plaintiffs and Nationwide Class Members. Plaintiffs and Nationwide Class Members were denied their statutorily protected right to refuse consent and protect their privacy and the economic value of their names, likenesses, and personas. Plaintiffs and Nationwide Class Members suffered emotional disturbance from the misappropriation and misuse of their names and personal information.

24

**ANSWER:**

25
26

In response to Paragraph 144, Defendant states that the allegations in this Paragraph consist of

legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant

27
28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

refers to the Cal. Civ. Code § 3344 for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

### COMPLAINT ¶145:

Plaintiffs on behalf of the Nationwide Class seek actual damages, including MyLife's profits from its misuse; statutory damages; compensatory damages for the royalties MyLife failed to pay; restitution; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting MyLife's illegal conduct; and declaratory relief.

**ANSWER:**

In response to Paragraph 145, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

### SECOND CAUSE OF ACTION
### California Tort of Appropriation of a Name or Likeness
### (Plaintiffs on behalf of the Nationwide Class)

### COMPLAINT ¶146:

Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

**ANSWER:**

In response to Paragraph 146, Defendant incorporates by reference the foregoing answers as if set forth fully herein.

### COMPLAINT ¶147:

California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

**ANSWER:**

In response to Paragraph 147, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

### COMPLAINT ¶148:

MyLife is a California company. Most of the wrongful acts and omissions giving rise to this complaint occurred in California. Accordingly, each use of a Nationwide Class Member's name, likeness, or persona in a MyLife advertisement violates California common law, wherever the Class Member resides in the United States.

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER:**

In response to Paragraph 148, Defendant admits that it is a California company.  Defendant states that the remaining allegations are legal conclusions which no response is required.  To the extent a response is required, Defendant denies the remaining allegations.

**COMPLAINT ¶149:**

By engaging in the forgoing acts and omissions, MyLife (1) used the identities of Plaintiffs and Nationwide Class Members in advertisements for subscriptions and as part of its subscription products; (2) appropriated Plaintiffs' and Nationwide Class Members' names and likenesses to MyLife's commercial advantage; (3) failed to obtain Plaintiffs' and Nationwide Class Members' consent; and (4) injured Plaintiffs' and Nationwide Class Members by causing harms both economic and emotional. See Eastwood, at 417.

**ANSWER:**

In response to Paragraph 149, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶150:**

On behalf of the Nationwide Class, Plaintiffs seek monetary recovery in the amount of the commercial advantage MyLife derived from its misuse; compensatory damages for MyLife's failure to pay royalties owed; and the entry of an injunction prohibiting MyLife's tortious acts.

**ANSWER:**

In response to Paragraph 150, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

### THIRD CAUSE OF ACTION
**Nevada Right of Publicity Statute, Nev. Rev. Stat. §§ 597.770 et seq.**
**(Plaintiff Bockius on behalf of the Nevada Sub-Class)**

**COMPLAINT ¶151:**

Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER:**

In response to Paragraph 151, Defendant incorporates by reference the foregoing answers as if set forth fully herein.

**COMPLAINT ¶152:**

Nevada's right of publicity statute recognizes that "[t]here is a right of publicity in the name, voice, signature, photograph or likeness of every person." Nev. Rev. Stat. § 597.790.

**ANSWER:**

In response to Paragraph 152, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant refers to the Nev. Rev. Stat. § 597.790 for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶153:**

Nevada's right of publicity statute prohibits "[a]ny commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent." Nev. Rev. Stat. § 597.810.

**ANSWER:**

In response to Paragraph 153, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant refers to the Nev. Rev. Stat. § 597.810 for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶154:**

By engaging in the forgoing acts and omissions, MyLife used Plaintiff Blockius' and Nevada Sub-Class Members' personalities, including their names, photographs, images, likenesses, and distinctive appearances, for commercial purposes without consent.

**ANSWER:**

In response to Paragraph 154, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT ¶155:**

Each use of a Nevada Sub-Class Members' name, photograph, or personality is a separate and distinct violation of Nev. Rev. Stat. § 597.810.

**ANSWER:**

In response to Paragraph 155, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant refers to the Nev. Rev. Stat. § 597.810 for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶156:**

Nev. Rev. Stat. § 597.810 provides that a person who violates the statute is liable for "[a]ctual damages, but not less than $750" and "Exemplary or punitive damages" if the defendant's use was knowing. A plaintiff is also entitled to "injunctive relief to prevent or restrain the unauthorized use."

**ANSWER:**

In response to Paragraph 156, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant refers to the Nev. Rev. Stat. § 597.810 for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶157:**

Because of MyLife's violation of Nev. Rev. Stat. § 597.810, Plaintiff Bockius and Nevada Sub-Class Members have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff Bockius and Nevada Sub-Class Members have been denied the economic value of their personalities, which MyLife misappropriated without compensation to Plaintiff Bockius and Nevada Sub-Class Members. Plaintiff Bockius and Nevada Sub-Class Members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff Bockius and Nevada Sub-Class Members suffered emotional disturbance from the misappropriation and misuse of their personalities.

**ANSWER:**

In response to Paragraph 157, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant refers to the Nev. Rev. Stat. § 597.810 for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

79406372v.4

1

2

3

4

**COMPLAINT ¶158:**

On behalf of the Nevada Sub-Class, Plaintiff Bockius seeks actual damages, including MyLife's profits from its misuse; statutory damages; compensatory damages for the royalties MyLife failed to pay; exemplary and punitive damages in light of MyLife's knowing misuse; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting MyLife's illegal conduct; and declaratory relief.

5

**ANSWER:**

6

7

8

In response to Paragraph 158, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

9

10

11

**FOURTH CAUSE OF ACTION**
**Ohio Right of Publicity Statute, Ohio Rev. Code § 2741**
**Plaintiff Evans on behalf of the Ohio Sub-Class)**

12

**COMPLAINT ¶159:**

13

14

Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

15

**ANSWER:**

16

17

In response to Paragraph 159, Defendant incorporates by reference the foregoing answers as if set forth fully herein.

18

**COMPLAINT ¶160:**

19

20

Ohio's right of publicity statute prohibits the use of "any aspect of an individual's persona for a commercial purpose" unless the person "first obtains the written consent" of the individual. Ohio Rev. Code § 2741.02 & § 2741.05.

21

**ANSWER:**

22

23

24

In response to Paragraph 160, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant refers to the Ohio Rev. Code § 2741.02 & § 2741.05 for its contents and denies any allegations of wrongdoing.  Defendant denies any remaining allegations in this Paragraph.

25

**COMPLAINT ¶161:**

26

27

28

By engaging in the forgoing acts and omissions, MyLife used aspects of Plaintiff Evans' and Ohio Sub-Class Members' personalities, including their names, photographs, images, likenesses, and distinctive appearances, for a commercial purpose without consent. These aspects of Plaintiff Evans' and Ohio Sub-

58

1  Class Members' personalities have commercial value, as evidenced by MyLife's use and similar use by
2  other companies.

**ANSWER:**

3
       In response to Paragraph 161, Defendant states that the allegations in this Paragraph consist of
4
   legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant
5
   denies the allegations in this Paragraph.
6
          **COMPLAINT ¶162:**
7
       Each use of an Ohio Sub-Class Members' personality is a separate and distinct violation of Ohio
8  Rev. Code § 2741.02.

9  **ANSWER:**

10
       In response to Paragraph 162, Defendant states that the allegations in this Paragraph consist of
11
   legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,
12
   Defendant refers to the Ohio Rev. Code § 2741.02 for its contents and denies any allegations of
13
   wrongdoing.  Defendant denies any remaining allegations in this Paragraph.
14
          **COMPLAINT ¶163:**
15
       Plaintiff Evans and Ohio Sub-Class Members are residents of the state of Ohio. See Ohio Rev.
16  Code § 2741.03.

17  **ANSWER:**

18
       In response to Paragraph 163, Defendant states that the allegations in this Paragraph consist of
19
   legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,
20
   Defendant refers to the Ohio Rev. Code § 2741.03 for its contents and denies any allegations of
21
   wrongdoing.  Defendant denies any remaining allegations in this Paragraph.
22
          **COMPLAINT ¶164:**
23
       Ohio Rev. Code § 2741.07 provides that a person who violates the statute is liable for (1) "[a]ctual
24  damages, including any profits derived from and attributable to the unauthorized use"; (2) "[a]t the election
   of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least two thousand
25  five hundred dollars and not more than ten thousand dollars"; and (3) "punitive or exemplary damages" if
   applicable under Ohio Rev. Code § 2315.21. The statute provides that "[t]he trier of fact shall include any
26  profits derived . . in calculating the award of actual damages." Ohio Rev. Code § 3741.07.

27

28
                                      59

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER:**

In response to Paragraph 164, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant refers to the Ohio Rev. Code § 2741.07 for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶165:**

Because of MyLife's violation of Ohio Rev. Code § 2741, Plaintiff Evans and Ohio Sub-Class Members have suffered injury to their privacy and intellectual property rights, and actual damages both economic and emotional, including actual damages in the amount of the profits MyLife derived from its unauthorized use. Plaintiff Evans and Ohio Sub-Class Members have been denied the economic value of their personas, which MyLife appropriated without compensation. Plaintiff Evans and Ohio Sub-Class Members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff Evans and Ohio Sub-Class Members suffered emotional disturbance from the appropriation and misuse of their personas.

**ANSWER:**

In response to Paragraph 165, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant refers to the Ohio Rev. Code § 2741 *et seq.* for its contents and denies any allegations of wrongdoing. Defendant denies any remaining allegations in this Paragraph.

**COMPLAINT ¶166:**

On behalf of the Ohio Sub-Class, Plaintiff Evans seeks statutory damages; actual damages, including MyLife's profits from its misuse; compensatory damages for royalties MyLife failed to pay; restitution, punitive and exemplary damages; the award of attorneys' fees and costs; an injunction prohibiting MyLife's unauthorized use; and declaratory relief. Plaintiff Evans intends to elect between actual and statutory damages at a later stage of the lawsuit, after discovery has revealed the amount of MyLife's profits.

**ANSWER:**

In response to Paragraph 166, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FIFTH CAUSE OF ACTION
**Ohio Tort of Appropriation of a Name or Likeness**
**(Plaintiff Evans on behalf of the Ohio Sub-Class)**

**COMPLAINT ¶167:**

Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

**ANSWER:**

In response to Paragraph 167, Defendant incorporates by reference the foregoing answers as if set forth fully herein.

**COMPLAINT ¶168:**

Ohio common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g., Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 231 n. 4 (Ohio 1976) (quotation omitted).

**ANSWER:**

In response to Paragraph 168, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant refers to the contents of the cited authorities and deny any allegations inconsistent with the cited authorities.

**COMPLAINT ¶169:**

By engaging in the forgoing acts and omissions, MyLife appropriated Plaintiff Evans' and Ohio Sub-Class Members' names and likenesses for its own commercial benefit.

**ANSWER:**

In response to Paragraph 169, Defendant states that the allegations in this Paragraph consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant denies the allegations in this Paragraph.

**COMPLAINT ¶170:**

As provided for under Ohio common law, on behalf of the Ohio Sub-Class, Plaintiff Evans seeks monetary recovery in the amount of the commercial benefit MyLife derived from its misuse of their likeness, as well as the entry of an injunction prohibiting MyLife's tortious acts.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

**ANSWER:**

2

In response to Paragraph 170, Defendant states that the allegations in this Paragraph consist of

3

legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant

4

denies the allegations in this Paragraph.

5

6

### SIXTH CAUSE OF ACTION
**California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq***
**(Plaintiffs on behalf of the Nationwide Class)**

7

8

**COMPLAINT ¶171:**

9

Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this

10

complaint.

**ANSWER:**

11

12

In response to Paragraph 171, Defendant incorporates by reference the foregoing answers as if set

13

forth fully herein.

**COMPLAINT ¶172:**

14

15

MyLife has and is engaged in unfair competition, as that term is defined in the California Unfair
Competition Law, Cal. Bus. & Prof. Code. § 17200 *et seq*. ("UCL").

16

**ANSWER:**

17

In response to Paragraph 172, Defendant states that the allegations in this Paragraph consist of

18

legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant

19

refers to the Cal. Bus. & Prof. Code. § 17200 *et seq*. for its contents and denies any allegations of

20

wrongdoing.  Defendant denies any remaining allegations in this Paragraph.

21

**COMPLAINT ¶173:**

22

As described in this complaint, MyLife's misappropriation and use without consent of Plaintiffs'
and Nationwide Class Members' names, photographs, likenesses, and personal information is a violation

23

of California's Right of Publicity statute, Cal. Civ. Code § 3344; Nevada's Right of Publicity statute, Nev.

24

Rev. Stat. § 597.810; Ohio's Right of Publicity statute, Ohio Rev. Code § 2741; and California and Ohio
common law prohibiting misappropriation of a name or likeness.

25

26

27

28

62

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL
DEFENSES

1   **ANSWER:**

2       In response to Paragraph 173, Defendant states that the allegations in this Paragraph consist of

3   legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendant

4   denies the allegations in this Paragraph.

5       **COMPLAINT ¶174:**

6   By engaging in the conduct described in this complaint and violating California, Nevada, and Ohio
    law, MyLife engaged in and continues to engage in "unlawful" business acts and practices prohibited by
7   the UCL.

8   **ANSWER:**

9       In response to Paragraph 174, Defendant states that the allegations in this Paragraph consist of

10  legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

11  Defendant denies the allegations in this Paragraph.

12      **COMPLAINT ¶175:**

13  By engaging in the conduct described in this complaint, including profiting from the sale and use
    in advertising of personal information it misappropriated without consent, MyLife engaged in and
14  continues to engage in "unfair" business acts and practices prohibited by the UCL.

15  **ANSWER:**

16      In response to Paragraph 175, Defendant states that the allegations in this Paragraph consist of

17  legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

18  Defendant denies the allegations in this Paragraph.

19      **COMPLAINT ¶176:**

20  As a result of MyLife's actions, Plaintiffs and Nationwide Class Members have been injured.
    Plaintiffs and Nationwide Class Members lost the economic value of their names, personas, and
21  likenesses, and are entitled to restitution, declaratory relief and an injunction. Plaintiffs and Nationwide
    Class Members were denied their rights to refuse consent and protect their privacy.
22

23  **ANSWER:**

24      In response to Paragraph 176, Defendant states that the allegations in this Paragraph consist of

25  legal conclusions to which no answer is required.  To the extent an answer is deemed necessary,

26  Defendant denies the allegations in this Paragraph.

27

28

79406372v.4

1

## **PRAYER FOR RELIEF**

2

WHEREFORE Plaintiffs, individually and on behalf of the Nationwide Class and state Sub-

3

Classes, request the following relief:

4

(a)     For an order certifying the proposed Classes and appointing Plaintiffs and their counsel to represent the Classes;

5

(b)     For a declaration that MyLife's acts and omissions constitute a knowing and willful

6

misappropriation of names, likeness, personas, and personalities, and infringe on protected privacy and intellectual property rights, in violation of California, Nevada, and Ohio statutes and common law;

7

(c)     For nominal damages awarded in recognition of MyLife's violation of the statutorily protected property and privacy rights of Plaintiffs and Class Members;

8

9

(d)     For preliminary and permanent injunctive relief enjoining and preventing MyLife from continuing to operate its www.mylife.com website without appropriate safeguards to ensure people's

10

personal information is not used illegally without their consent;

11

(e)     For restitution to Plaintiffs and Class Members of the money MyLife unjustly earned through sales made by misappropriating their names, likenesses, personas, and personalities;

12

(f)     For an award of damages, including without limitation: damages for actual harm; profits

13

earned by MyLife; reasonable royalties for the infringement of Plaintiffs' and Class Members' intellectual property rights; and statutory damages;

14

(g)     For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and Class

15

Members; and

16

(h)     Orders granting such other and further relief as the Court deems necessary, just, and proper.

17

## **ANSWER:**

18

Defendant denies that Plaintiffs or any putative class member are entitled to any of the relief

19

requested in the FAC.

20

## **JURY TRIAL DEMAND**

21

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

22

## **ANSWER:**

23

Defendant admits that Plaintiffs purport to demand a jury trial.  Defendant denies that Plaintiffs

24

are entitled to a jury trial and denies any remaining allegations in the Jury Trial Demand.

25

26

27

28

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendant asserts the following defenses without assuming any burden of production or proof, except as required by applicable law with respect to the particular defense asserted.  Defendant reserves the right to plead any additional affirmative or other defenses as they become known or available during the pendency of this action.

## FIRST DEFENSE

### Constitutional Right to Free Speech

Plaintiffs' claims are barred, in whole or in part, because the content posted on Defendant's website is protected by the United States Constitution and, in particular, the First Amendment.

## SECOND DEFENSE

### Commerce Clause

Plaintiffs' claims are barred, in whole or in part, because the dormant Commerce Clause of the United States Constitution precludes the application of a state statute in a manner that has the practical effect of controlling conduct beyond the boundaries of the state.

## THIRD DEFENSE

### Waiver/Consent

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs consented to any use of their information as alleged in their FAC.

## FOURTH DEFENSE

### Intervening/Superseding Cause

Plaintiffs' claims are barred, in whole or in part, because the information concerning Plaintiffs on Defendant's website was already in the public domain and a third-party (or third-parties) placed such information on the public domain.

## FIFTH DEFENSE

### Failure to Mitigate Damages

To the extent that Plaintiffs or the putative class members have failed to mitigate their alleged damages, Plaintiffs' and/or the putative class members' claims for relief are barred.

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIXTH DEFENSE

### Lack of Standing

To the extent Plaintiffs' and/or the putative class includes individuals who suffered no concrete harm, such individuals lack standing to bring suit against Defendant.

## SEVENTH DEFENSE

### Proximate Cause

Any damages sustained by Plaintiffs and/or putative class members were not proximately caused by Defendant.

## EIGHTH DEFENSE

### Statute of Limitations

Plaintiffs' claims and/or the putative class members' claims are barred in whole or in part to the extent they occurred and/or accrued outside the applicable statute(s) of limitations.

## NINTH DEFENSE

### Release

To the extent Plaintiffs and/or any putative class member has executed a release encompassing claims alleged in the FAC, those claims are barred by such release(s).

## TENTH DEFENSE

### Not Appropriate for Class Action

The FAC, and each purported cause of action alleged therein, is not proper for treatment as a class action because, among other reasons: (a) Plaintiff cannot establish commonality of claims; (b) Plaintiff cannot establish typicality of claims; and (c) the individualized nature of Plaintiffs' claims predominate and thus make class treatment inappropriate.

## ELEVENTH DEFENSE

### Class Action Not Superior Method of Adjudication

The alleged claims are barred, in whole or in part, as a class action, because a class action is not the superior method of adjudicating this dispute.

66

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TWELFTH DEFENSE

### Inadequate Class Representatives

The FAC, and each purported cause of action alleged therein, fails to the extent that Plaintiffs are not adequate representatives of the alleged classes that they purport to represent.

## THIRTEENTH DEFENSE

### No Entitlement to Punitive Damages

Plaintiffs and/or putative class members are not entitled to punitive damages because Defendant made reasonable efforts to follow the law at all times and because such an award would violate the right of Defendant to be protected from "excessive fines," as provided in the Eighth Amendment to the United States Constitution.

## FOURTEENTH DEFENSE

### Communications Decency Act, 47 U.S.C. § 230(c)(1)

Plaintiffs' claims and/or the putative class members' claims are barred in whole or in part by the Communications Decency Act, 47 U.S.C. § 230(c)(1).

## FIFTEENTH DEFENSE

### Public Affairs Exception, Section 3344(d)

Plaintiffs' claims and/or the putative class members' claims under Cal. Civ. Code § 3344 are barred by the public affairs exception.

## SIXTEENTH DEFENSE

### Arbitration on Individual Basis

To the extent Plaintiffs or any putative class members have agreed to arbitrate their claims on an individual basis, those individuals must submit their claims to arbitration on an individual basis, they are not proper class members in this action, and they are not entitled to relief in this action.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEVENTEENTH DEFENSE**

**Lack of UCL Standing**

Plaintiffs and putative class members lack standing to assert their claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, because they did not suffer a loss of money or property sufficient to confer such standing.

DATED: February 4, 2022

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Steven A. Erkel*
Steven A. Erkel
Attorneys for Defendant
MyLife.com, Inc.

DEFENDANT'S ANSWER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND ADDITIONAL DEFENSES

79406372v.4